John & Heidi Rapillo
14 Winding Lane
Scarsdale, NY 10583
(914-472-8191)

November 26, 2016

The Honorable Vernon S. Broderick
United States District Judge
Thurgood Marshall
United States Courthouse
40 Foley Square, Room 415
New York, NY 10007

    Re: Rapillo vs. Fingerhut, et al
        Case #1:09-CV-10429-VSB

Dear Judge Broderick:

    You recently issued a ruling pertaining to the above-referenced case. Our attorney filed a Motion to be relieved as Counsel which was granted so we are now Pro Se Appellants. Please forgive us if we are not following the correct protocols.

    When you issued your ruling, I am not certain that you were aware of the attached Affirmation of Investigator Shannon Rowe of the District Attorney's office.

    We were duped into a Ponzi scheme by David Holzer and Barry Fingerhut and Mr. Fingerhut ended up with part of our money according to the Manhattan District Attorney's office.

    The attached Affirmation of Investigator Rowe states that $928,500 of the money we wired to David & Leslie Holzer was subsequently paid to Barry & Pamela Fingerhut and Fingerhut Holzer Partners. During the Holzer proceedings, we were told that a Civil Suit would be appropriate against Barry Fingerhut because there are documents in the District Attorney's files that show our money went directly to Barry & Pamela Fingerhut and Fingerhut Holzer partners. We proceeded to file a Civil Suit which you dismissed.

S.D. OF N.Y.
2016 DEC -1 AM 11:17
SDNY PRO SE OFFICE
RECEIVED

The Honorable Vernon S. Broderick
Page 2
November 26, 2016

If you refer to the Affirmation of Investigator Rowe of the $1.6 million we transferred to David & Leslie Holzer (see page 7 of the Affirmation), David Holzer then paid Barry Fingerhut with our money which were stolen funds:

- $200,000 to Barry & Pamela Fingerhut
- $228,400 to Fingerhut Holzer Partners
- $500,000 to VCampus to purchase stocks which David Holzer later assigned to Barry Fingerhut

This totals $928,500 of our money which was stolen funds and should be returned to us by Barry Fingerhut.

The information we need to proceed with our Appeal is in the District Attorney's office. We need access to the District Attorney's files which, they have told us, are sealed and require a Judge's order for them to be released. In the interest of fairness and justice we request that you issue this order so that we may be allowed access to these files that are pertinent to our Appeal and especially since we are told the case has been closed.

Thank you in advance for your consideration.

Respectfully submitted,

*Heidi Rapillo*
Heidi Rapillo

*John Rapillo*
John Rapillo

Enclosure

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------X

ROBERT M. MORGENTHAU,
District Attorney of New York County,

        Plaintiff-Claiming Authority,

-against-

David Holzer,

        Defendant.
----------------------------------------------------------------X

Index No. 400891/08

AFFIRMATION
IN SUPPORT OF
AMENDING SUMMONS,
COMPLAINT, AND ORDER
TO SHOW CAUSE

STATE OF NEW YORK  )
                        : ss.:
COUNTY OF NEW YORK  )

        Investigator SHANNON ROWE, being duly sworn, deposes and says:

    1.    I am an Investigator, Shield #158, in the New York County District Attorney's Office, and as such I am a public servant of the kind specified in CPL 690.05(1). I have been a member of DANY Investigations for over five years. Previous to that I was an investigator with DOI for two years, and I have training and experience in investigating white collar crime, including money laundering, grand larceny and identity theft cases. I am currently assigned to an investigation involving David Holzer and Lesley Holzer, and am familiar with its facts.

    2.    Except as otherwise stated below, I make this affirmation upon information and belief based upon: (i) my review of information contained in plaintiff's files, (ii) my conversations with Barry Fingerhut, Heidi and John Rapillo, and Michael and Barbara Zackman; (iii)

000172

conversations with private investigators hired by one of the victims in this case, (iv) my review, and the review by a financial analyst, of the defendant's and the victims' bank records.

3. I submit this affidavit in support of Plaintiff's request to add Lesley Holzer to the instant action as a non-criminal defendant, pursuant to the provisions of Article 13-A of the CPLR. I also submit this affidavit in support of Plaintiff's request to add Lesley Holzer to the TRO previously issued in the instant action. In this case, specifically, plaintiff seeks the forfeiture from David and Lesley Holzer of certain property, to wit, $16,645,483.33 (Sixteen Million, Six Hundred and Forty-Five Thousand, Four Hundred and Eighty-Three Dollars and Thirty-Three Cents), which constitutes the "proceeds," and/or the "substituted proceeds," of the felony crime of Grand Larceny in the First Degree (Penal Law § 155.42). Alternatively, plaintiff seeks forfeiture from the criminal defendant David Holzer for the value of the aforementioned property, to wit, the sum of $16,645,483.33 (Sixteen Million, Six Hundred and Forty-Five Thousand, Four Hundred and Eighty-Three Dollars and Thirty-Three Cents), as the instrumentality of his crimes. Also alternatively, plaintiff seeks a money judgment against the criminal defendant David Holzer for the value of the aforementioned property in the sum of $16,645,483.33 (Sixteen Million, Six Hundred and Forty-Five Thousand, Four Hundred and Eighty-Three Dollars and Thirty-Three Cents).

## STATEMENT OF FACTS

### The Defendant's Activities With Regard to Barry Fingerhut

4. The summons and verified complaint in this action for forfeiture pursuant to Article 13-A of the CPLR, which is appended hereto as Exhibit A, is grounded upon the defendant's illegal activities during the period from on or about March, 2002 to March, 2008. I am informed by Barry

000173

Fingerhut that Fingerhut met David Holzer while Holzer worked as a trader for Brean Murray. They formed a working relationship in which Holzer would trade Over-the-Counter (OTC) stocks for Fingerhut.

5. As of early 2002, Holzer and Fingerhut had worked with one another for several years, and had known each other for approximately 12 years. In March 2002, Holzer contacted Fingerhut at his place of business, GeoCapital, located at 825 Third Avenue, New York City, New York County, New York, and proposed an investment opportunity to Fingerhut. Holzer told Fingerhut that he had formed a partnership with two other individuals, Daniel Katz and Jeffrey Schwartz, called Dellwood Partners, and that the partnership was investing in real estate in upstate New York. Holzer asked Fingerhut to take a one-half interest in Holzer's one-third of the partnership. Fingerhut agreed.

6. Fingerhut began wiring money in stages to Holzer to make up his half of their one-third partnership for a piece of property that Holzer claimed Dellwood was buying in Haverstraw, NY. As time went by, Holzer told Fingerhut that Dellwood was making additional investments in real estate, in Haverstraw, Monticello, Beacon, Newburgh and Nyack, New York. Fingerhut wired money to Holzer's account to pay for those additional investments.

7. Fingerhut wired the following amounts on the following dates to Holzer's account at JP Morgan Chase Bank totaling $12,062,200.00:

| DATE | DEPOSIT AMOUNT |
|---|---|
| March 27, 2002 | $62,500 |
| April 29, 2002 | $862,500 |
| July 25, 2002 | $1,500,000 |

000174

| | |
|---|---|
| July 25, 2002 | $1,593,000 |
| October 17, 2002 | $140,000 |
| November 8, 2002 | $187,000 |
| January 13, 2003 | $266,000 |
| April 2, 2003 | $489,000 |
| July 24, 2003 | $283,000 |
| October 14, 2003 | $231,150 |
| November 24, 2003 | $383,000 |
| December 22, 2003 | $216,000 |
| February 2, 2004 | $270,000 |
| April 21, 2004 | $516,000 |
| July 23, 2004 | $900,000 |
| October 12, 2004 | $600,000 |
| November 23, 2004 | $244,000 |
| April 20, 2005 | $693,750 |
| May 17, 2005 | $289,000 |
| July 11, 2005 | $98,300 |
| August 3, 2005 | $519,000 |
| October 18, 2005 | $190,000 |
| November 9, 2005 | $300,000 |
| December 7, 2005 | $255,000 |
| December 7, 2005 | $125,000 |
| December 16, 2005 | $10,000 |
| May 23, 2006 | $360,000 |
| August 8, 2006 | $215,000 |
| September 15, 2006 | $294,000 |
| TOTAL | $12,062,200 |

8. Holzer's bank records show that the above figures were received by him. Those records also show that in 2002, Holzer gave over three million dollars to an individual who was apparently not connected with any company named Dellwood Partners, or with Daniel Katz or Jeffrey Schwartz. In fact, there is no indication that any company named Dellwood Partners ever existed, and Holzer's bank records do not show any transactions with either Katz or Schwartz. Also from 2002 to 2006, Holzer's bank records demonstrate that he and his wife lived a lavish lifestyle,

4

000175

spending extravagantly on clothing, travel, an interior designer, jewelry, Holzer's children's rent, his father's senior residence in upstate New York, and that these and other personal expenses were primarily how Holzer spent the money he obtained from Fingerhut.

9. In 2004, Holzer told Fingerhut that the Haverstraw property was going to be sold for approximately $99 million, and that their share of the profit would be approximately $33 million. At that time, Fingerhut suggested to Holzer that they use the proceeds of the real estate sale to start their own partnership, through which they could manage their money by making investments. The two formed a partnership, FH Partners, and opened an office while Fingerhut waited for the proceeds from the sale of the Haverstraw property that Holzer said was imminent. During this time, as can be seen above, Fingerhut continued to pay money to Holzer for investments that Dellwood partners was supposedly making.

10. I am further informed by Fingerhut, that in or about February 2005, Holzer asked Fingerhut to loan him some money because Holzer claimed that he had a capital call at Brean Murray, and he needed cash to pay to Brean Murray for an investment he had there. I am informed by Fingerhut that on February 4, 2005, and March 8, 2005, Fingerhut wired $202,000 and $860,000, for a total of $1,062,000, to Holzer based on Holzer's representations that Holzer had to pay the capital call and that the money would be paid back to Fingerhut. I am informed by Nick Cangro, financial analyst for the New York County District Attorney's Office ("DANY") that a review of records from Brean Murray reveal that no capital call or money was put in to Brean Murray investments in February or March of 2005. I am further informed by Nick Cangro that he has reviewed Holzer's JP Morgan Chase Bank records for the same time period, and the records reveal that the two above-described deposits were made into Holzer's

000176

accounts, but that no money went to Brean Murray at that time, but rather a good portion of the money, $560,053 went to the U.S. Treasury.

11. In the spring of 2007, Holzer told Fingerhut that the sale of the Haverstraw property had closed, and showed Fingerhut a deposit receipt from JP Morgan Chase bank showing a deposit of a check for $33.6 million into Holzer's accounts. I am informed by Nick Cangro that a review of the bank accounts show that after the $33 million check was deposited, it in fact bounced, and the account was closed thereafter.[1]

12. In October 2007, Lincoln Ornston, of a private investigative firm named Thacher Associates, met with Holzer in FH Partners' office. Holzer admitted to Ornston that Dellwood Partners never existed, and that Holzer never had a partnership with Schwartz or Katz. He also admitted that he did not purchase property in Haverstraw, that he did not use Fingerhut's money to purchase property in Haverstraw or any other location, and that he instead used Fingerhut's money for personal and business-related expenses. Holzer also told them that all of the money was gone, and that he only had about $40,000 left in his bank accounts.

13. Holzer promised to pay Fingerhut back, and in late November 2007 issued two checks drawn on a Citibank account made payable to Fingerhut totaling approximately $7 million. A review of Holzer's Citibank account records reveals that those checks were written on an account with insufficient funds.

---

[1] It was later determined that Holzer in fact wrote the $33.6 million check to himself, from an account that did not have sufficient funds to cover it.

000177

bill; on March 2, 2006, he paid $8,509.61 to his Washington Mutual home mortgage account, and spent the rest of the money on smaller personal and business transactions, none of which appeared to be investments made on the Rapillos' behalf.

17. I am informed by the Rapillos that on March 23, 2006, they wired $800,000 to Holzer because Holzer said that he would invest all of that money in a company called VCampus. Rather than invest all of that money, however, a review of Holzer's bank records by Nick Cangro shows that after Holzer received $800,000 from the Rapillos on March 23, 2006, that same day Holzer wired VCampus only $500,000. That $500,000 was initially put only in Holzer's name, and later he assigned all of his rights in that stock to Barry Fingerhut.

18. I am further informed by Nick Cangro that on March 24, 2006, and April 21, 2006, Holzer paid $32,309.16 and $61,595.43 respectively to American Express; on March 30, 2006, and April 10 and 13, 2008, Holzer wired $25,000, $27,000, and $30,000 respectively to the FH Partners' account; on March 31, 2006, Holzer wired $17,500 to a company called CE Technologies, Inc.; on April 18, 2006, Holzer gave his daughter, Jennifer Holzer $5,000; and on April 20, 2006, Holzer paid someone named Neal Richard $20,000.

### The Defendant's Activities With Regard to Michael and Barbara Zackman

19. I am informed by Michael Zackman, that between November 2006 and November 2007, he paid Holzer a total of $1,773,283.33. Michael Zackman informs me that this money was paid to Holzer because Holzer told him he would make him a partner in his investments if Zackman paid for half of the investment.

8

00179

20. I am informed by Zackman that on November 10, 2006, Zackman wired Holzer $600,000 which Zackman says he believed was for an investment Holzer had already made in Knox Lawrence International, LLC for a company called Vertex. I am further informed that on December 11, 2006, David Holzer and his wife, Lesley Holzer, and Michael and Barbara Zackman signed a partnership agreement that created a partnership with regard to the funds that were supposed to be invested. The agreement stated that the Holzers contributed $600,000 to the partnership and that the Zackmans contributed $600,000 to the partnership. I am further informed by Zackman that on December 19, 2006, Zackman wired another $175,000 to Holzer, and that on January 23, 2007, Zackman wired another $133,000 to Holzer, for further investment into Knox Lawrence. Zackman signed an addendum to his partnership with Holzer on June 11, 2007, that referenced these additional funds as investments to Knox Lawrence. A review of the amendment to the partnership agreement indicates that an additional $308,000 was contributed by the Zackmans for the Vertex deal through Knox Lawrence that would make them 50 percent owners of Holzer's holdings in that deal.

21. I am further informed by Michael Zackman that in 2007, David Holzer told him about an investment that Knox Lawrence was doing in a company called Consonus, and asked that Zackman participate in three different investments with him in Consonus. The first investment, on May 18, 2007, was to be a $250,000 investment split three ways between David Holzer, Michael Zackman, and Barry Fingerhut. The next two payments, in October and November of 2007 were to make additional investments in Consonus through Knox Lawrence. I am informed that Michael Zackman wired to David Holzer $83,333.33 on May 18, 2007, $78,000 on October 10, 2007, and $42,000 on November 30, 2007 for these investments.

000180

### The Defendant's Activities With Regard to Heidi and John Rapillo

14. In October 2005, defendant Holzer told Heidi and John Rapillo that he was involved in some good investments, and encouraged them to invest through him. The Rapillos gave David Holzer a total of $1.6 million between December 2005 and March 2006, believing, based on Holzer's representations, that Holzer would invest that money for them.

15. First, on December 15, 2005, the Rapillos sent a wire for $600,000 to Holzer because Holzer told them he was investing their money in a movie theater. DANY financial analyst Nick Cangro reviewed Holzer's bank records, and has informed me that, rather than invest the money, once the $600,000 was received in Holzer's account on December 15, 2005, Holzer transferred $200,000 to Barry Fingerhut's personal account; then on January 9, 2006, he transferred $50,000 to FH Partners' account; on January 9, 2006 Holzer also paid $35,025.63 to American Express for his personal charge card bill; on January 10, 2006, and January 13, 2006, he transferred $20,000 and $15,000 respectively to FH Partners' account; on January 17, 2006, he paid $24,360 to Mid Hudson Fence company. Holzer also generally spent the rest of the money on smaller personal and business transactions, none of which appear to be "investments," but instead largely supported the extravagant lifestyle he and his wife were living.

16. John and Heidi Rapillo wired $200,000 to Holzer's account on January 31, 2006, because Holzer told them he would invest their money in a penthouse project. Rather than invest the money, however, a review of Holzer's bank records by Nick Cangro shows that after Holzer received the $200,000 from the Rapillos, on January 31, 2006, and February 10, 14, and 27, 2006, Holzer transferred $20,000, $15,000, $16,500, and $10,000, respectively, to FH Partners' account; on February 14, 2006 he paid $48,280.77 towards his American Express charge card

22.  I believe that Holzer lied to the Zackmans when he claimed that the money they sent was to buy a half share into investments that Holzer had made or was going to make through Knox Lawrence. The only way Holzer's claim could have been accurate is if he had invested in Knox Lawrence twice the total amount of money that Zackman sent for the investments, or $2,222,666.66. I am informed by Barry Fingerhut that he did not make a $250,000 investment in Knox Lawrence in May 2007 with David Holzer and Michael Zackman. A review of Holzer's bank account records show that on November 10, 2006, the same day that Zackman sent the initial $600,000 for the Vertex investment through Knox Lawrence, Holzer wired $300,000 to Knox Lawrence. I am further informed by DANY financial analyst Nick Cangro that an analysis of Holzer's JP Morgan Chase bank account records from January 2001 through June 2007 show that the total amount of money that Holzer sent to Knox Lawrence, LLC is $363,667. Furthermore, between November 10, 2006, the date of Zackman's initial payment for a purported Knox Lawrence-related investment, and December 19, 2006, the date of the next payment for what was supposed to be the Vertex deal through Knox Lawrence, there are no payments from Holzer's account to Knox Lawrence. Furthermore, from December 19, 2006, until Holzer's account was closed in June of 2007, the records show no payments were made to Knox Lawrence from Holzer's account. I am further informed by Nick Cangro that a review of Holzer's Citibank account, which was opened after Holzer's Chase account was closed in June 2007, shows that there were no payments to Knox Lawrence between June 2007 and December 2007.

23.  I am informed by Michael Zackman that on or about February 14, 2007, David Holzer asked Zackman to invest in a real estate deal in Florida called St. Augustine, through a

n 0181

company called Trident. Zackman had invested with Trident in the past at Holzer's suggestion, and had sent the money for those investments directly to the lawyers who held the trust account for the company, Foley and Lardner, in Florida. For this investment, however, Holzer told Zackman to send the money directly to Holzer, as Zackman would be taking a half interest in what Holzer owned already. In order to make the $600,000 investment (which Zackman understood from Holzer to be half of Holzer's $1.2 million investment), Zackman sold some stock in his portfolio, and wired the following funds on the following dates to Holzer:

| DATE | AMOUNT WIRED |
|---|---|
| February 14, 2007 | $100,000 |
| March 14, 2007 | $200,000 |
| April 3, 2007 | $100,000 |
| April 16, 2007 | $25,000 |
| April 24, 2007 | $175,000 |
| TOTAL | $600,000 |

24. In fact, Holzer had only about $100,000 of his own funds invested in the St. Augustine investment at that time. In October, 2007, Holzer assigned all his rights in the St. Augustine investment to Fingerhut, not to Zackman.

25. I am further informed by Michael Zackman that he sent Holzer a wire on July 12, 2007, for $41,650. After that wire was sent, Zackman was uncertain how Holzer was going to invest the money, and so contacted Holzer to find out. I am informed by Zackman that initially

11

Holzer could not remember, but then got back to Zackman several days to a few weeks later, and told Zackman that the investment was in parking spots for a real estate investment that Zackman had made previously through Trident, called "Waverly."

26.   I believe that Holzer lied to Zackman when he said that the money Zackman was investing in the Trident investments was for half the interest that Holzer had in Trident. A review of Holzer's bank records by Nick Cangro revealed that the total amount of money Holzer sent to Foley & Lardner between January 2001 and December 2007, was $665,471.91. I am certain that no investments were made prior to January 2001 because I am further informed by Barry Fingerhut that Fingerhut had found this investment and told Holzer about the investment sometime after they started FH Partners in 2004.

27.   I was further informed by Barbara Zackman that on October 9, 2007, she transferred $20,300.00 from her and Michael Zackman's account at Citibank to Holzer's Citibank account. They did this because David Holzer told them there were legal bills connected with one of their investments equaling $36,600, of which they had to pay half, and that he also wanted to borrow another $2,000, which he would return at a later time. I am further informed that later, possibly in January 2008, Holzer did pay them back $2,000. I am informed by Nick Cangro, however, that a review of Holzer's bank records show that Holzer did not use the $18,300 he kept to pay legal fees, nor did he invest it for them. Instead, on October 9, 2007, the same day he received the money from them, he paid American Express $16,280 for his charge card bill.

## The Defendant's Activities with Regard to Barry Pessar

28. I am informed by Michael Zackman that Barry Pessar told Zackman that he gave Holzer $150,000 to invest during the week of March 24, 2008.

29. I am further informed by Nick Cangro that a review of records recently received from Citibank shows that on March 13, 2008, Holzer had a negative balance of $13,333.29 in his bank account. On March 27, 2008, Holzer received a deposit in the amount of $150,000, and that money was withdrawn from the account between March 27, 2008, and April 3, 2008, through checks in amounts no larger than $22,000. On April 3, 2008, the balance in Holzer's account was $15,517.60. This activity is consistent with the defendant's prior pattern of taking money from would-be "investors" and then using the money for his own personal benefit rather than investing it on their behalf.

## The Proceeds of the Defendant's Crimes

30. Based on the foregoing, and based on my training and experience, it is my opinion that the defendant has been engaging in a pattern of activity that constitutes numerous crimes, including but not limited to the felony crime of Grand Larceny in the First Degree (Penal Law § 155.42).

31. The total proceeds of defendant Holzer's criminal activities, with regard solely to Barry Fingerhut, in this case is $13,124,200.00. This figure represents the total sum of the funds that Barry Fingerhut gave to the defendant from March 27, 2002 to September, 15, 2006, during which time the defendant fraudulently represented that he was investing the money. In addition, the proceeds of Holzer's crimes against Heidi and John Rapillo is $1,600,000.00. This figure represents

13

the total sum of the funds that the Rapillos sent to Holzer during the period between December 2005 and March 2006. In addition, the total proceeds of the defendant's crimes against Michael and Barbara Zackman are $1,771,283.33, which figure represents the total amount of money sent by the Zackmans to Holzer from November 2006 until November 2007, minus the $2,000.00 that was returned to them. Lastly, the proceeds of the defendant's crime against Barry Pessar is $150,000.00, the amount of money that Pessar gave to Holzer during the week of March 24, 2008. Thus, by adding up these amounts, the total proceeds of defendant's crimes in the instant case is $16,645,483.33 (Sixteen Million, Six Hundred and Forty-Five Thousand, Four Hundred and Eighty-Three Dollars and Thirty-Three Cents).[2]

## Lesley Holzer's Receipt Of The Illegal Proceeds

32. The investigation has determined that defendant David Holzer is married to Lesley Holzer, and that they reside at 10 Sky Drive, New City, New York. A review of property records shows that 10 Sky Drive in New City, New York, is jointly owned by the defendant and his wife, Lesley Holzer. From 2002 through the present this appears to be their primary address, and the investigation has revealed that they live there together. At the time of the defendant's arrest, he and his wife also shared a rented apartment in Manhattan, at 50 East 78th Street, Apartment 10A. They have three children in common, aged 23, 29 and 31.

33. I am informed by Nick Cangro, that he reviewed the defendant's bank records, and that from March, 2002, to June, 15, 2007, the defendant and Lesley Holzer shared a joint checking

---

[2] Criminal defendant David Holzer's activities constitute a well-known type of scheme called a "Ponzi" scheme, in which a defendant will steal from new victims to pay back previous victims. The investigation in this case revealed that David Holzer's Ponzi scheme actually began prior to his first theft in 2002 from Barry Fingerhut, and that he had at least one prior victim.

14

000185

account, number ending in 5365, at Chase Bank. I am further informed that from June 14, 2007, they shared a joint checking account, number ending in 0313, at Citibank. During both those periods of time, neither the defendant nor Lesley Holzer appeared to have any other personal checking accounts.

34. I am informed by Nick Cangro that both the defendant and Lesley Holzer regularly wrote checks from their joint checking accounts at both Chase and Citibank, and that they both appeared to pay their living expenses and personal bills from those accounts. These expenses included mortgage payments for the house in New City, rent for the apartment in Manhattan which they shared, utilities for both addresses, and credit card bills. I am informed that a review of the defendant and Lesley Holzer's credit card bills show purchases such as jewelry, expensive family vacations, cars, furs, designer clothing, high-end electronics, and furniture.

35. I have been informed by Nick Cangro of the information from here through paragaraph 41, based on his review of the defendant and Lesley Holzer's joint bank records and tax returns.[3] In 2002, the total deposits made to the defendant and Lesley Holzer's joint checking account at Chase bank was approximately $4,579,011.17. Of that sum, $4,345,000.00 came from deposits made by Barry Fingerhut, one of the defendant's victims. In their joint federal tax return for that year, however, the defendant and Lesley Holzer declared a total income of $144,403.00. They then claimed $76,929.00 in deductions, and demanded a $21,395.00 refund.

36. In 2003, the total deposits made to the defendant and Lesley Holzer's joint checking account at Chase bank was approximately $1,971,592.62. Of that sum, $1,868,150.00 came from deposits made by Barry Fingerhut. In their joint federal tax return for that year, however, the

---

[3] Copies of the tax returns were obtained with subpoenas to the Holzers' accountants, and are not copies of the final, signed returns that were actually filed with the Internal Revenue Service.

000186

defendant and Lesley Holzer declared a total income of $107,239.00. They then claimed $116,022.00 in deductions, and demanded a $6,641.00 refund.

37.    In 2004, the total deposits made to the defendant and Lesley Holzer's joint checking account at Chase bank was approximately $2,606,237.58. Of that sum, $2,530,000.00 came from deposits made by Barry Fingerhut. In their joint federal tax return for that year, however, the defendant and Lesley Holzer declared a total income of $115,542.00. They then claimed $110,156.00 in deductions, and declared that they owed $304.00 in taxes.

38.    In 2005, the total deposits made to the defendant and Lesley Holzer's joint checking account at Chase bank was approximately $4,329,298.68. Of that sum, $4,112,050.00 came from deposits made by Barry Fingerhut and Heidi Rapillo. In their joint federal tax return for that year, however, the defendant and Lesley Holzer declared a total income of -$496,515 (negative income), based on an income of $52,795.00 and then by writing off $3,000.00 in capital losses and $546,310.00 in business losses from Fingerhut Holzer Associates. On the Profit & Loss statement attached to the defendant and Lesley Holzer's taxes, they claimed that FH Associates earned $0.00 income in that year. They then demanded a refund of $1,619.00.

39.    In 2006, the total deposits made to the defendant and Lesley Holzer's joint checking account at Chase bank was approximately $3,147,861.04. Of that sum, $2,844,000.00 came from deposits made by Heidi Rapillo, Barry Fingerhut and Michael Zackman. In their joint federal tax return for that year, however, the defendant and Lesley Holzer declared a total negative income of $891,623.00. This was based on an income of $42,189.00, and then by writing off $3,000.00 in capital losses, $408,161.00 in business losses from Fingerhut Holzer Associates, and a net operating loss carryover of $522,651.00. They claimed a refund of $1,654.00.

000187

40. From January, 2007, through May, 2007, the total deposits made to the defendant and Lesley Holzer's joint checking account at Chase bank was approximately $883,038.55. Of that sum, $641,333.33 came from deposits made by Michael Zackman. As of May 29, 2007, the balance in that checking account was $8,788.32. On May 30, 2007, the defendant wrote himself a check for $33,600,000.00 and deposited it into the joint checking account he held with his wife, and showed the deposit slip to Barry Fingerhut. However, on June 5, 2007, the bank stopped payment on the check for insufficient funds, prompting the bank to subsequently close the account on June 15, 2007. The defendant and Lesley Holzer opened a joint Citibank checking account on June 14, 2007.

41. From May, 2007 through December 2007, of the approximately $812,047.89 that was deposited into the Holzers' joint checking account, $181,950.00 was deposited by Michael or Barbara Zackman.[4] During that time, on November 29, 2007, the defendant wrote two checks to Barry Fingerhut, one for $5,600,000.00 and one for $1,400,000.00. At that time, the defendant and Lesley Holzer's joint checking account contained a little more than $9,000.00. Both checks bounced.[5]

42. All of the money deposited into the defendant and Lesley Holzer's joint checking accounts by Fingerhut, the Zackmans, the Rapillos, and Barry Pessar were sent via wire transfer, and therefore the source of those funds appeared directly on the joint bank statements. The bank statements show an address of 10 Sky Drive in New City.

---

[4] Much of the remaining deposits appear to have come from sales of personal items such as jewelry and a car.
[5] The defendant's accountant did not send copies of the Holzers' 2007 tax returns, so those are not examined here.

000188

43. It is clear from the defendant and Lesley Holzer's joint bank statements that Lesley Holzer obtained and spent a substantial portion of the proceeds of the defendant's crimes.

WHEREFORE, I respectfully urge that plaintiff's application for a temporary restraining order pending determination of the motion for a preliminary injunction be granted together with such other and further relief as to this court may seem just and proper, and the costs of this motion.

Dated: New York, New York
    February 18, 2009

_____
Investigator Shannon Rowe

Sworn to before me
This 18th day of
February, 2009.

_____
Notary Public

MADELEINE GUILMAIN
Notary Public, State of New York
No. 02GU6181568
Qualified in Queens County
My Commission Expires 02/04/2012

18

000189