H7APRAPC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  JOHN RAPILLO, HEIDI RAPILLO,

4              Plaintiffs,

5         v.                        09 CV 10429 (VSB)

6  BARRY FINGERHUT, ET AL.,

7              Defendants.

8  ------------------------------x
                                   New York, N.Y.
9                                  July 10, 2017
                                   1:02 p.m.
10
   Before:
11
                   HON. VERNON S. BRODERICK,
12
                                       District Judge
13
                        APPEARANCES
14
   HEIDI RAPILLO, PRO SE
15

16

17

18

19

20

21

22

23

24

25

H7APRAPC

1          (In open court)

2          (Case called)

3          MS. RAPILLO:  So I am Heidi Rapillo.

4          THE COURT:  All right.  Ms. Rapillo, let me just

5     review for you the documents we have in connection with today's

6     conference.  I have two letters dated February 2nd, which are

7     docket numbers 95 and 96.  I also have a March 30th letter,

8     which is docket number 98, and I have a June 14th letter, which

9     is docket number 101.

10         Are there any other documents I should have in

11    connection with today's conference?

12         MS. RAPILLO:  No.  It's in regards to Mr. Holzer and

13    Mr. Fingerhut, yes.

14         THE COURT:  Correct.  As I understand it, there were

15    two issues --

16         MS. RAPILLO:  Yes, please.

17         THE COURT:  -- that were mentioned, one being that the

18    next step with regard to proceeding against Mr. Holzer?

19         MS. RAPILLO:  Correct.

20         THE COURT:  And the second being the new evidence that

21    the plaintiffs claim implicates Mr. Fingerhut?

22         MS. RAPILLO:  Yes.

23         THE COURT:  So those are the two issues, as I

24    understand it, that are related to today.  Okay.  So what is

25    the nature of the new evidence that you believe -- and by

H7APRAPC

1  "new," what I would take that to mean is evidence that I was

2  not made aware of and that your attorney was unaware of at the

3  time of the filing of the summary judgment motion?

4        MS. RAPILLO:  Okay.  So I wanted to make a motion

5  under rule 60(b) to reopen the judgment based on new evidence

6  that you did not receive.  There was an affirmation from the

7  DA's office that was not included by my attorney.

8        THE COURT:  Okay.  Was it something, though -- What

9  did it relate to?  What was stated in the affirmation?

10       MS. RAPILLO:  What's stated, it shows that how

11  Mr. Fingerhut was a direct beneficiary of our funds, stolen

12  funds.

13       THE COURT:  Okay.  And this is something, I take it

14  from what you're saying, that I didn't receive the affirmation,

15  but was it referenced in the submissions that were made in

16  connection with the summary judgment motion?

17       MS. RAPILLO:  I believe he referenced 200,000, but

18  there was no evidence.  He didn't include the affirmation from

19  the district attorney's office, which showed further funds

20  directed to Mr. and Mrs. Barry Fingerhut's personal account, as

21  well as David and Barry's business account, as well as a stock

22  that was purchased with our funds under Mr. Holzer's name and

23  then transferred to Mr. Fingerhut, in lieu of a debt.

24       And then I also have a 13D schedule from the SEC that

25  documents that, and I brought everything with me, a copy of the

H7APRAPC

1   affirmation from the DA's office, as well as schedule 13D, if

2   you would like me to --

3           THE COURT:  Were those materials that you've already

4   provided?

5           MS. RAPILLO:  No.

6           THE COURT:  In other words, that we have copies of?

7           MS. RAPILLO:  No.

8           THE COURT:  You can hand those up, and if you could

9   hand them to my law clerk, Mr. Swenson.

10          MS. RAPILLO:  Thank you.

11          THE COURT:  Okay.  All right.  So I have the documents

12  here.

13          MS. RAPILLO:  And if you turn to page 00178, 00179,

14  those two pages pertain to John and I, my husband and I, John

15  and Heidi Rapillo, and then that's the --

16          THE COURT:  Okay.  So I see the handwriting that's at

17  the top of the page.  That's yours?

18          MS. RAPILLO:  That's my handwriting.  I apologize.

19          THE COURT:  No, that's all right.  I just wanted to

20  make sure.  So that's the affirmation submitted by the DA's

21  office?

22          MS. RAPILLO:  Right.

23          THE COURT:  And in connection with this, was there

24  anything else you wanted to point out in connection with the

25  affirmation, any other information in there?

H7APRAPC

| 1 | MS. RAPILLO:  Just that how the monies -- how that

2 | 200,000, when we wired to Mr. Holzer, how that was directly the

3 | same day transferred to Mr. Barry, his business partner, and

4 | his wife's personal account, $200,000.

5 | THE COURT:  And do you know, with regard to the

6 | underlying documentation, does that show that Mr. Fingerhut was

7 | aware of where those funds were coming from?  In other words,

8 | if they were coming directly from you or that they were funds

9 | from you or from -- well, from you?

10 | MS. RAPILLO:  Do I know for certain that he knew that

11 | those were my funds?  I believe he knew, but --

12 | THE COURT:  I'm sorry.  Is there documentary evidence

13 | to show that he was aware of that, either by e-mail traffic or

14 | bank records and the like, that show that Mr. Fingerhut was

15 | aware of these funds being transferred?

16 | MS. RAPILLO:  Mr. Fingerhut's attorney, Mr. Folkenflik

17 | was supposed to submit that to my previous attorney, and he

18 | never submitted bank records and transfers.  So I put in a FOIA

19 | request, many, which were turned down because I wanted to have

20 | the paper trail of that, but I was turned down for that as

21 | well.  I was told that perhaps that I should ask you to

22 | possibly unseal the records, but I don't have any further

23 | documentation of that.

24 | I do have Mr. Holzer's account number that I wired the

25 | money into.  I do have Mr. Fingerhut's Citibank account that

H7APRAPC

```
 1    that money was transferred to.  I don't know if that's

 2    something that a subpoena -- again I don't know.

 3              THE COURT:  I guess the question is, was this the

 4    subject -- and I just don't remember --

 5              MS. RAPILLO:  Yes.

 6              THE COURT:  -- was this the subject of any testimony

 7    by either Mr. Holzer or Mr. Fingerhut?  In other words,

 8    during --

 9              MS. RAPILLO:  I recall that there was --

10    Mr. Fingerhut, when he was deposed, he didn't deny that he knew

11    it, and he said:  I guess it's their money.  I recall seeing

12    that.  I don't have it with me, a copy of --

13              THE COURT:  All right.  Well, let's discuss the rest

14    of the documents, and then I'll discuss the next steps with

15    regard to your proposed motion to reopen the record.  So I have

16    the 13D, schedule 13D filing.

17              MS. RAPILLO:  Yes.

18              THE COURT:  Now, is there a particular --

19              MS. RAPILLO:  Yes.

20              THE COURT:  -- page in that document that you'd refer

21    me to?

22              MS. RAPILLO:  Yes, I am.  So if you turn to, it would

23    be actually the third page, and it's numbered page 1 of 1.  I

24    have the original at home because it's an extremely lengthy

25    printout from the SEC.
```

H7APRAPC

```
 1                THE COURT:  Yes.

 2                MS. RAPILLO:  And if you go down to paragraph 9, the

 3      consideration for the transfer of these shares was the

 4      cancellation of a debt owed to the reporting person, by a

 5      business associate.  Was that the one?  No, pardon me.  The

 6      next page, sorry.

 7                THE COURT:  I'm sorry, the next page?

 8                MS. RAPILLO:  Yes.  Pardon me.  Three of four.  And

 9      then do you see where it says item 3?

10                THE COURT:  Yes.

11                MS. RAPILLO:  Did I put little arrows by yours?

12                THE COURT:  You did.

13                MS. RAPILLO:  Okay.  So if you go to those arrows

14      there, it begins, where it talks about the amount of shares

15      were transferred to Mr. Fingerhut by a business associate as a

16      consideration for the cancellation of a debt owed to

17      Mr. Fingerhut by the business associate, and that amount

18      equaled to the original purchase price.

19                And that was Mr. Holzer turning that over to

20      Mr. Fingerhut because when I first found this back in 2008, I

21      called the district attorney's office.  I spoke to Christine

22      Payne, and she said:  Yes, Mrs. Rapillo, that was your money

23      that he bought those shares with, and that was turned over to

24      Mr. Fingerhut.  And that's where this whole thing started,

25      where she said, then you can sue Mr. Fingerhut civilly.
```

H7APRAPC

1          THE COURT:  Well, I don't want to get into what

2     conversations --

3          MS. RAPILLO:  No, that's fine.

4          THE COURT:  -- you had with the ADA.

5          MS. RAPILLO:  Right.

6          THE COURT:  But I guess the question I have, is this a

7     similar sort of thing?  In other words, this is Mr. Holzer?

8          MS. RAPILLO:  Right.

9          THE COURT:  Trans --

10          MS. RAPILLO:  This supports the affirmation that Nick

11     Cangro wrote on the pages 77 and 78 that shows how the V-Campus

12     stock was purchased and later transferred to Mr. Fingerhut; so

13     this supports the affirmation.

14          THE COURT:  I'm sorry, the affirmation -- I didn't

15     hear who you just said.

16          MS. RAPILLO:  Pardon me.  This supports the

17     affirmation that I just gave you.

18          THE COURT:  From the DA's office?

19          MS. RAPILLO:  Yes.

20          THE COURT:  Okay.  Because were you preferring to

21     paragraphs 77 and 78 or --

22          MS. RAPILLO:  Pages.

23          THE COURT:  -- because I thought you were -- oh,

24     because I only have 18 pages on the affirmation.

25          MS. RAPILLO:  You only have what, I'm sorry?

H7APRAPC

|   |   |
|---|---|
| 1 | THE COURT:  I thought you were saying pages 78 and 79, |
| 2 | but the affirmation only has 18 pages; so I wasn't sure what |
| 3 | page you were referring to. |
| 4 | MS. RAPILLO:  I'm sorry, seven and eight.  I |
| 5 | apologize. |
| 6 | THE COURT:  Oh, seven and eight.  All right.  All |
| 7 | right.  Anything else with regard to the 13D? |
| 8 | MS. RAPILLO:  Pardon me? |
| 9 | THE COURT:  Anything else with regard to the 13D?  In |
| 10 | other words, the page 3 or 4? |
| 11 | MS. RAPILLO:  The SEC report? |
| 12 | THE COURT:  Yes. |
| 13 | MS. RAPILLO:  It's basically just a very detailed |
| 14 | report and how it shows on the day that I wired David the |
| 15 | 500,000, how he purchased that stock, and then how it shows |
| 16 | that he paid off his business partner in lieu of a debt.  It's |
| 17 | documented there. |
| 18 | THE COURT:  Okay.  And here again, do you know whether |
| 19 | either Mr. Fingerhut or Mr. Holzer were questioned with regard |
| 20 | to the 13D and the transfer of the stock? |
| 21 | MS. RAPILLO:  I'm sorry, I didn't -- |
| 22 | THE COURT:  During their depositions, do you know |
| 23 | whether they were asked questions? |
| 24 | MS. RAPILLO:  Yes, they were. |
| 25 | THE COURT:  Okay. |

H7APRAPC

1          MS. RAPILLO:  Yes, they were.

2          THE COURT:  And now, finally, there's a document which

3    is entitled Timeline of Stolen Funds.

4          MS. RAPILLO:  Yes, that's something that we just put

5    together based on the district attorney's affirmation.

6          THE COURT:  Okay.  All right.  So I guess the question

7    is, I think that certain of this information may have been

8    available to your attorney and may have been part of the prior

9    summary judgment motion.  Having said that, I'll give you an

10   opportunity, if you want, to file your motion under the rules

11   of civil procedure to reopen it based upon new evidence.

12          It's not entirely clear to me that it necessarily is

13   new evidence, but I'll allow you to do that, in particular, in

14   light of the fact that you are currently representing yourself

15   and you're not represented by counsel.

16          Let me ask, is there anything, in addition to what's

17   already in your letters, that you would add to your motion for

18   me to consider, both either factually or argumentative, in

19   other words, arguments that you would put forth?  So I'm giving

20   you an opportunity to submit a brief, if you will.

21          MS. RAPILLO:  I did prepare something.

22          THE COURT:  Okay.

23          MS. RAPILLO:  And basically -- shall I read it?

24          THE COURT:  No, you don't have to read it.

25          MS. RAPILLO:  Okay.  Just basically tell you?

H7APRAPC

|    |    |
|----|----|
| 1  | THE COURT:  I mean, if you want to make that -- |
| 2  | MS. RAPILLO:  What I basically want to state here is I |
| 3  | believe that it is undeniable that there was collusion between |
| 4  | Mr. Fingerhut and Mr. Holzer, and that the money that |
| 5  | Mr. Holzer transferred to Mr. Fingerhut, that he had the |
| 6  | knowledge that that was our money. |
| 7  | THE COURT:  I know that that is your belief. |
| 8  | MS. RAPILLO:  Yes. |
| 9  | THE COURT:  And I know that there were transfers that |
| 10 | were made. |
| 11 | MS. RAPILLO:  Yes. |
| 12 | THE COURT:  But it's pretty clear that Mr. Holzer, you |
| 13 | know, from the criminal case, clearly stole your money. |
| 14 | MS. RAPILLO:  Yes. |
| 15 | THE COURT:  So what makes you think that he then |
| 16 | communicated where these funds were coming from to |
| 17 | Mr. Fingerhut? |
| 18 | MS. RAPILLO:  Because they were business partners, and |
| 19 | I believed he knew that my husband received this money.  The |
| 20 | money was coming in for an accident that he had, and I believe |
| 21 | that -- |
| 22 | THE COURT:  Okay.  No, I understand that, but -- okay. |
| 23 | So what I guess what I'm saying is with regard to the motion -- |
| 24 | MS. RAPILLO:  Yes. |
| 25 | THE COURT:  -- I'll allow you to sort of marshal all |

H7APRAPC

1    of the things you submitted sort of separately in the letters.

2    If you tell me, though, that I should consider each of your

3    letters, so each of the letters on February 2nd, all the

4    letters that I mentioned earlier, that you want me to consider

5    that and whatever document that you mentioned just now, as well

6    as the exhibits you handed up as your motion, I will do that.

7              MS. RAPILLO:  Thank you.

8              THE COURT:  So I can do that, but I'm giving you an

9    opportunity, if you want to, if there's anything else --

10             MS. RAPILLO:  Okay.

11             THE COURT:  -- that you haven't --

12             MS. RAPILLO:  May I ask my husband or my father

13   because they've worked with this.

14             THE COURT:  Feel free to consult them.

15             (Pause)

16             THE COURT:  You know you can step up, if you like.

17             MS. RAPILLO:  I guess what he's --

18             THE COURT:  This is your husband?

19             MS. RAPILLO:  My husband, John.  I mean, we believe

20   that these two men, I know it's a strong word, perpetrated

21   fraud.

22             MR. RAPILLO:  Deliberately.

23             MS. RAPILLO:  Yes, and I know that one walked into the

24   DA's office and one took the fall.  I believe both were --

25             MR. RAPILLO:  Guilty.

H7APRAPC

1          MS. RAPILLO:  -- were guilty of whatever shenanigans

2     they were trying to plan here, whether it's Ponzi, I believe it

3     was straight-out fraud.

4          THE COURT:  Okay.

5          MR. RAPILLO:  There were other people involved also

6     that chose to take a backseat because they wrote it off to the

7     government.  We're not in that position.

8          THE COURT:  You mean other victims?

9          MS. RAPILLO:  Yes, yes.

10         THE COURT:  Okay.  All right.  So, Ms. Rapillo --

11         MS. RAPILLO:  Yes.

12         THE COURT:  -- shall I rely on the letters and then

13     the exhibits you provided?

14         MS. RAPILLO:  Yes, or should I forward to you the

15     entire 13D schedule from V campus, which is extremely thorough.

16     I mean, this is just a portion of it.

17         THE COURT:  Sure.  I take it it's something that's

18     publicly available?

19         MS. RAPILLO:  Yes, it is.

20         THE COURT:  So that we can go on to the SEC's website

21     and get a copy?

22         MS. RAPILLO:  I believe it was, and didn't we recently

23     try to go on, it looks like it was removed?  Maybe it is still

24     there.  It should be.

25         THE COURT:  I know that some of the SEC files can

H7APRAPC

 1    be --

 2             MS. RAPILLO:  I remember, I would say approximately,

 3    maybe 50 pages.

 4             THE COURT:  Why don't we do this.  That way, it's part

 5    of the record, why don't you submit it to us.

 6             MS. RAPILLO:  Okay.

 7             THE COURT:  And I'll make it part of the record.  If

 8    that's not too difficult.  And that way, we won't have to go

 9    back and forth, if we go to the website and find out that we

10    can't access it because for whatever reason.

11             MS. RAPILLO:  Okay.  Thank you.

12             THE COURT:  So besides that, I will consider the

13    letters that you submitted; so let me just review them.  Two

14    letters on February 2nd, the letter on March 30th, and the

15    letter on June 14th, as well as the three items you handed up.

16             MS. RAPILLO:  Yes.

17             THE COURT:  And you're going to send us the complete

18    version of the 13D.

19             MS. RAPILLO:  Yes, I will, your Honor.

20             THE COURT:  Okay.  So anything else with regard to the

21    motion because I wanted to also discuss --

22             MS. RAPILLO:  Would it be too much -- we did put in a

23    FOIA request to have the records released to us, but they're

24    telling us that they are sealed; so they are considered --

25             THE COURT:  Now, which records are you referring to?

H7APRAPC

1          MS. RAPILLO:  For Mr. Fingerhut and Mr. -- well,

2     really, it's Mr. Holzer, Mr. Fingerhut, everything that led up

3     to the sentencing for Mr. Holzer.

4          THE COURT:  You mean the DA's file?

5          MS. RAPILLO:  Yes, the DA's file.  Pardon me.

6          THE COURT:  Okay.  I'll take that under consideration

7     when I consider the motion to reopen the matter.

8          MS. RAPILLO:  Okay.  Thank you.

9          THE COURT:  All right?  So now with regard to

10    Mr. Holzer.

11         MS. RAPILLO:  Yes, that's short and sweet.  I just --

12    as far as Mr. Holzer goes, I wanted to request summary judgment

13    based on his plea agreement because he did -- he's pled guilty

14    to stealing the entire amount from us, and I brought a copy of

15    his plea agreement.

16         THE COURT:  Okay.

17         MS. RAPILLO:  So I guess to move forward.

18         THE COURT:  I guess the question is, and I don't know

19    and it may be part of the record already, I don't remember.

20    Was there a judgment entered in State court?

21         MS. RAPILLO:  Yes, and basically recently Hope

22    Korenstein walked -- brought over -- the Safe Horizons phoned

23    me that they didn't have the restitution order.  So when I

24    called Judge Farber's chambers, they I guess notified Hope

25    Korenstein, and she sent that over.  And since then, I spoke to

H7APRAPC

1    Barbara Martin, who's the supervisor there, and she said that

2    Mr. Holzer's court order of restitution was not satisfied in

3    criminal court, and he has not responded to any papers or

4    submitted any W2s and pay stubs.  And I know for a fact that he

5    works now, and guess he's still on parole.  I guess he feels

6    that he doesn't have to.

7            THE COURT:  I don't have, obviously, the restitution

8    order in front of me, but do you know what the time frame was,

9    was he supposed to --

10           MS. RAPILLO:  I believe once he was released from

11   prison, that he was going to start to pay back whatever the

12   amount was, and Safe Horizons contacted him and sent letters.

13   I did speak to somebody in restitution, and she referred me to

14   Safe -- I forgot her name, I apologize.

15           THE COURT:  I guess I'm not sure what I can do --

16           MS. RAPILLO:  I understand, right.

17           THE COURT:  -- with that document.

18           MS. RAPILLO:  But this is his history, basically.

19           THE COURT:  Sure.  So I guess the issue is here, he is

20   still in the case, and I don't remember.  Mr. Swenson, did he

21   receive notice of this?

22           THE LAW CLERK:  He did, yes.

23           THE COURT:  Okay.  All right.  So the issue is whether

24   or not he's going to participate here in the case against him.

25   You know, the next step, he did not move one way or the other,

```
1    so what I will do is set a conference explicitly saying that he

2    should indicate -- because I know that he was, obviously, in

3    prison for a while, and then once he got out, I think there was

4    some correspondence from him, but to determine whether or not

5    he's going to participate here at all.

6              MS. RAPILLO:  Okay.

7              THE COURT:  And we can then take the next step.  If he

8    doesn't participate, in other words, he doesn't show up, he

9    basically absents himself from these proceedings, would be you

10   seeking a default judgment against him.

11             MS. RAPILLO:  Okay.

12             THE COURT:  Which would then allow you to get a

13   judgment here, and again assuming he doesn't show up, a default

14   judgment against him for a certain amount, and then you would

15   have to seek enforcement of that judgment.

16             MS. RAPILLO:  Okay.

17             THE COURT:  Once you get it.

18             MS. RAPILLO:  Okay.

19             THE COURT:  I just don't remember when we last heard

20   from him with regard to this matter.  So perhaps we should set

21   something now.

22             Ms. Williams, how are we that week of August 9th; so

23   the 7th or the 8th?

24             THE DEPUTY CLERK:  We'll do the 7th.  We can do

25   12:00 p.m. August 7th.
```

H7APRAPC

| | |
|---|---|
| 1 | THE COURT:  Noon at August 7th, does that work? |
| 2 | MS. RAPILLO:  Very good.  August 7th at noon. |
| 3 | THE COURT:  So we'll issue an order saying we have a |
| 4 | status conference for the case and directing that Mr. Holzer |
| 5 | appear and warning him that should he fail to appear, that the |
| 6 | plaintiffs may seek relief by a default judgment. |
| 7 | MS. RAPILLO:  Perfect, okay. |
| 8 | THE COURT:  Okay. |
| 9 | MS. RAPILLO:  Thank you very much. |
| 10 | THE COURT:  All right. |
| 11 | MS. RAPILLO:  Judge Broderick, thank you. |
| 12 | THE COURT:  So we'll wait to get your submission. |
| 13 | MS. RAPILLO:  Yes, schedule 13D to you, and I will |
| 14 | send that out immediately. |
| 15 | THE COURT:  Okay.  All right.  You had mentioned that |
| 16 | there was a two-page document that you referred to.  Do you |
| 17 | have a written statement or something that you wanted to submit |
| 18 | or read?  You had mentioned there was something, should I read |
| 19 | it, and I wasn't sure what that was. |
| 20 | MS. RAPILLO:  That was what I was going to state. |
| 21 | Yes, that was just my -- |
| 22 | THE COURT:  Is that something you just want to submit, |
| 23 | or do you want to just make it part -- |
| 24 | MS. RAPILLO:  I can submit it.  Of course, I can |
| 25 | submit it to you.  It's just basically ... yes. |

H7APRAPC

1          THE COURT:  You can file that also.  Why don't you --

2          MS. RAPILLO:  Yes, do you want me to submit it to you?

3     Okay.

4          THE COURT:  And you can reference it.

5          MS. RAPILLO:  There was just a note down here, god

6     forbid you said no, so it's what I was going to say in

7     response.

8          THE COURT:  No, I'll allow you to submit it as part of

9     your motion.  No, you can hand it up, and Ms. Williams will

10    make sure that this gets filed.  Right?  It's like a letter in

11    support of their motion or statements in support.

12         MS. RAPILLO:  Those are my statements that I was going

13    to say to you.

14         THE COURT:  It can be as a letter to the pro se

15    office, that's fine.  So we'll take care of getting that

16    docketed, so it's part of the docket.  And I'll consider it and

17    the other documents we discussed today as part of your motion.

18         All right.  Okay.  Is there anything else?

19         MS. RAPILLO:  No, that's it.

20         THE COURT:  So we're going to come back here

21    August 7th.

22         MS. RAPILLO:  August 7th.

23         THE COURT:  And then we'll see what's going to proceed

24    from there.  In all likelihood, I will not have a decision on

25    the new evidence issue at that time.  I just wanted to make

H7APRAPC

1   sure you weren't coming here expecting that you're going to

2   hear on both.

3           MS. RAPILLO:  No, not at all.  Thank you so much.

4   Thank you for your time today, your Honor.  Thank you so much.

5           THE COURT:  No, thank you for coming in.

6           (Adjourned)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25