UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

John Rapillo & Heidi Rapillo

Plaintiffs (PRO SE)

        - Against –

Barry Fingerhut, et al

Defendants

Case No. 09-CV-10429 (VSB)

Memorandum of Law to Vacate Judgment Pursuant to Fed.R.Civ.P 60(b)(6)

## Memorandum of Law

Presently before this Court is Plaintiff's Motion to Vacate the Court's Order for Summary Judgment dated September 14, 2016. Plaintiffs argue that relief from this Order is warranted under Fed.R.Civ.P60(b)(6).

<u>Analysis in Support of Motion for Relief from Judgment Based on Rule 60(b)</u>

This matter is a claim for return of assets improperly removed from a partnership, Fingerhut-Holzer Partners (the Partnership"). Barry Fingerhut ("Fingerhut") and David Holzer ("Holzer") ("the Partners") were partners from 2002 through 2008. Plaintiffs were induced to invest in the partnership by Holzer in October 2005, with various investments totaling $1.9 million, which was allegedly to make them partners in the profits of the business but in reality was to defraud them of their investment.

Fingerhut was the senior partner in the partnership and the Plaintiffs were encouraged to invest in the partnership based upon his alleged business acumen. After the investigation by the District Attorney's office it was determined that Holzer had invested very little in the partnership and embezzled significant funds. By 2005, unbeknownst to the Plaintiffs, the partnership was in turmoil and Fingerhut was pressuring Holzer for money.

In the summer of 2007, after Fingerhut became concerned about Holzer's fraud and after several months of demanding Holzer to return his funds, Fingerhut hired Thacher Associates to investigate Holzer. When Thacher Associates confirmed Holzer's fraud Fingerhut, representatives from Thacher Associates and Fingerhut's attorneys reported Holzer to the NYC District Attorney's office on fraud charges.

Ultimately, Holzer *was convicted of fraud and sentenced to 5 to 15 years in jail.* During depositions for his trial, it was clear that Fingerhut knew of the investments by the Plaintiffs in his partnership but chose to ignore it. Instead, Fingerhut took all of the Partnership's assets as reimbursement for his own losses.

The Grand Jury minutes and the Affirmation from District Attorney Shannon Rowe (Exhibit 1) in pursuing the fraud charges against Holzer ("the Criminal Record") will support the Plaintiff's position that Fingerhut knew that the money Holzer invested/transferred in The Waverly, V-Campus, Fingerhut-Holzer Partners and Fingerhut's personal account was not money belonging to Holzer. Therefore, when reimbursement was made to Fingerhut (prior to Fingerhut reporting Holzer to the D.A.) from the partnership, at the very least, the Plaintiffs should have received a pro-rata share of the reimbursement equal to their investment in the partnership.

Therefore, the Plaintiffs respectfully request that the Court reopen the underlying Case and order that the Grand Jury information be released so that the Plaintiffs may support their

claim for Conversion damages against Fingerhut. Fingerhut helped Holzer in Conversion by accepting stolen money.

## Argument

60(b)(6) Additional Justified Relief

A. Nonfeasance of Plaintiffs' attorney, Robert Conway:

Mr. Conway failed to present and enunciate key evidence to the Court. These items of evidence include:

1. The Affirmation dated February 18, 2009 N.Y. of District Attorney Investigator Shannon Rowe (Exhibit 1) which indicates that Barry Fingerhut was a direct beneficiary of funds that the Rapillos entrusted to David Holzer which was to be invested in various legitimate entities and without their knowledge those same funds were redirected to Mr. & Mrs. Barry Fingerhut's personal account as well as the Fingerhut-Holzer Partners account which was controlled by Mr. Fingerhut.

On March 23, 2006, Plaintiffs wired to David Holzer $800,000 with the understanding it was to be invested for us in legitimate entities. On the same day (March 23, 2006), David Holzer purchased "in his name" $500,000 in V-Campus stock. On January 25, 2008, three months before his indictment by the District Attorney, Holzer transferred all of the shares to Barry Fingerhut in lieu of a cancellation of debt that he owed to Fingerhut. Thus, using the Rapillos' funds to pay off Fingerhut and try to pay down the funds he stole

from him. The Affirmation from D.A. Shannon Rowe (Exhibit 1) confirms this along with the V-Campus Schedule 13-D-SEC.gov, Page 3 (Exhibit 7). The Affirmation also confirms that on December 15, 2005 and January 31, 2006, the Rapillos wired $800,000 to David Holzer. As part of that sum, Holzer transferred $200,000 to Mr. & Mrs. Fingerhut's personal account and approximately $140,000 to the account of Fingerhut-Holzer Partners.

2. Letter dated April 2, 2014 (Exhibit 4) written by Barry Fingerhut's attorney, Max Folkenflik, where Attorney Folkenflik states, "Holzer used some of the money he received from Plaintiffs to invest in V-Campus in his own name and to pay $200,000 on an antecedent $1 million debt he owed to Fingerhut."

3. Thacher Associates Report issued October 2007 (Exhibit 2) – commissioned by Barry Fingerhut to investigate David Holzer when he suspected fraud. This report confirms David Holzer's fraud and Fingerhut reimbursing himself from the partnership before turning Holzer into the D.A.

4. Barry Fingerhut Deposition dated February 7, 2013 (Exhibit 3)

One of the key questions Mr. Conway asked Fingerhut in his deposition (Exhibit 3) was "Do you dispute that the $800,000 transferred by the Rapillos to Mr. Holzer on March 23, 2006 that $500,000 V-Campus stocks were purchased by Mr. Holzer?" It seemed that Mr. Fingerhut did not answer the question and Mr. Folkenflik answered: "WE DON'T KNOW IF IT WAS THE RAPILLOS' MONEY THAT MR. HOLZER USED – IT MIGHT HAVE BEEN/IT MIGHT NOT HAVE BEEN." It is very important to keep in mind that when Mr. Folkenflik made the statement "IT MIGHT HAVE BEEN," Mr. Fingerhut did not

challenge the statement. That nonresponse from Fingerhut would certainly indicate that he did not disagree with Folkenflik's answer (See Pages 99, 100 & 101 of Fingerhut's deposition-Exhibit 3).

Folkenflik also made the following statement: "$800,000 went into his account from the Rapillos and we don't know whether there were millions of dollars in the account." Mr. Conway answered: "From Mr. Holzer we know there was nothing there."

Based on the comments above:

- Mr. Folkenflik speaking for Mr. Fingerhut indicates: "The funds might have come from the Rapillos?" Since Mr. Fingerhut did not challenge those comments, HE DID NOT DISAGREE.

B. Evidence Not Presented:

1. Affirmation of Investigator Shannon Rowe (Exhibit 1)

   Relevance:

   a) The Affirmation supports the Controlling Person Theory showing that Fingerhut invested $13 million in Fingerhut-Holzer Partners. Holzer invested just approximately $111,000. Fingerhut was clearly able and did exercise financial pressure and control over Holzer.

   Mr. Fingerhut's control over Mr. Holzer was exhibited through intimidation and coercion by forcing Mr. Holzer to repay debts owed to him any way he could and later permitting his personal attorney, Max Folkenflik, to

represent Holzer in his legal battles and most likely paying for those services.

Interesting to note that Max Folkenflik, Esq. is currently representing Mr. Fingerhut in the Rapillos' case and was also the attorney to David Holzer in the same case.  In essence, Mr. Folkenflik was representing both sides in the same case and enabled Mr. Fingerhut to continue "control" over Mr. Holzer's testimony.  Ethically, how could Mr. Fingerhut allow his lawyer to represent David Holzer, the person who embezzled millions of dollars from him if there was no collusion between Fingerhut and Holzer?

Mr. Holzer's first deposition was taken on March 28, 2012 at the Greene Correctional Facility (Exhibit 6) by Mr. Conway with Mr. Folkenflik representing him.  Mr. Holzer, prior to the deposition, had agreed to make certain information available concerning transfer of funds on the condition that no Civil Suit be brought against his family.  During the deposition, Mr. Folkenflik asked Holzer "did you at any time ask him (referring to Mr. Conway) to withdraw the names of your family members from the law suit?"  Mr. Holzer answered "We talked about it. Yes." (Refer to Holzer's Deposition, Page 125 (Exhibit 6).

In reviewing Holzer's deposition it is clear that Holzer had decided against cooperating and did not reveal anything with regard to Mr. Fingerhut's receipt of funds from Holzer.  In fact, his answers to questions posed to him by Mr. Conway were "I DON'T RECALL."  During Holzer's

questioning, Attorney Folkenflik directed Holzer away from answering sensitive questions.

b) The Affirmation further supports the Fraud Respondent Superior Law. The Court Record states that New York State Law "precludes suits against an employer for a theft committed by an employee so long as the employer did not induce the employee to commit the theft."

Fingerhut, by pressuring Holzer to give him his money and threatening to turn him into the D.A. forced Holzer to solicit personal acquaintances for funds (See Declaration from John Rapillo) did absolutely induce Holzer to commit theft knowing full well Holzer had no money and would have to raise it any way he could.

c) The Affirmation further endorses the claim of Fraud through Veil Piercing. N.Y. State Law states, "A Court may pierce the corporate veil where (1) the owner exercised complete domination over the corporation with respect to the transition at issue and (2) such domination was used to commit fraud.

Fingerhut exercised complete dominance over Holzer both financially by investing far more in Fingerhut-Holzer Partners than Holzer and pressuring him to return his money and by putting his freedom at risk by threatening to turn him into the District Attorney which he eventually did.

d) Claim of Conversion "Money may be the subject to conversion if it is specifically identifiable and there is an obligation to return it or treat it in a

3. Thacher Report (Exhibit 2)

Relevance:

The investigation by Thacher Associates (Exhibit 2) verified the control and pressure put on David Holzer by Barry Fingerhut by threating to report him to the D.A. The Report confirms David Holzer admitted to his fraudulent practices with regard to Fingerhut-Holzer Partners. On October 3, 2007 Holzer and Fingerhut signed a Contingent Assignment of Equity Interests Agreement, pursuant to which Holzer agrees that, if he has not paid the sum of $6,970,300 to Fingerhut by October 15, 2007, Holzer will (a) assign to Fingerhut all of his share of the investments made by Fingerhut-Holzer Partners (Totaling $7,274,500); and (b) at Fingerhut's request, resign from Fingerhut-Holzer Partners (See page 5 of The Thacher Associates Report Exhibit 2).

On October 9, 3007, Holzer signs a Secured Promissory Note, pursuant to which he agrees to pay Fingerhut the sum of $7,603,800.

On October 15, 2007, Holzer signs a Notice of Resignation from Barry/David Partners, LLC (Barry/David Partners was a vehicle formed by Fingerhut and Holzer that received carried interests in certain investments made by Fingerhut-Holzer Partners (See Page 5 of The Thacher Associates Report, Exhibit 2).

After the fraud became known, Holzer assigned to Fingerhut his interest in the investments made by Fingerhut-Holzer Partners; the amount of this assignment totaled $8,997,501 (See the Thacher Report Page 7, Exhibit 2). Holzer wrote two checks to Fingerhut, both of which bounced (See Fingerhut deposition, page 145, Exhibit 3). This further shows the pressure Holzer was under by Fingerhut that he would write him two checks knowing they would bounce.

Fingerhut shortly thereafter informed the D.A. of Holzer's fraud.

C. Additional Relevant Case Laws:

a) N.Y. Penal Law 165.40

This law states: "a person is guilty of criminal possession of stolen property in the fifth when he knowingly possesses stolen property with the intent to benefit himself or a person other than the owner thereof or to impede the recovery by an owner.

There is no question that Rapillos' money was stolen by Holzer and transferred to Fingerhut-Holzer Partners and to Fingerhut. This is undisputed by Shannon Rowe's Affirmation and Fingerhut's own attorney.

b) Solomon R. Guggenheim Found. v. Lubell, 77 N.Y. 2d 311, 317, 567 N.Y. 2d 623, 569, N.E. 2d 426 (1991).

"An owner may seek recovery of unidentifiable stolen property, such as a piece of artwork from an innocent good faith purchase for value."

Rapillos' funds have clearly been identified by N.Y. District Attorney's investigation.

### Conclusion

The Court asked: "If there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied. (Marvel Characters, Inc. v Simon, 310 F.3d 280, 286 2d Cir 2002)."

We submit that based on the aforementioned evidence there is amble cause to Vacate the Summary Judgment Order.

In addition, we request that the Court order the release of all Grand Jury records in this matter.

Respectfully submitted,

Date 6-24-19

*John Rapillo*
John Rapillo

Date 6-24-19

*Heidi Rapillo*
Heidi Rapillo

Address: 14 Winding Lane, Scarsdale, NY 10583

Telephone: 914-472-8191

Email: hrapillo@optonline.net

Rapillo
14 Winding Lane
Scarsdale, NY 10583

Pro Se Unit
U.S. District Court
Southern District
500 Pearl Street, Room 200
New York, NY 10007

2019 JUN 27 AM 11:11
SDNY PRO SE OFFICE
RECEIVED


USMS SDNY