# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
JOHN RAPILLO AND HEIDI RAPILLO

               Plaintiffs,

    -against-

BARRY FINGERHUT, DAVID HOLZER,
FINGERHUT-HOLZER PARTNERS LLC,
FINGERHUT-HOLZER EQUITIES, INC.,
FINGERHUT HOLZER, INC., FINGERHUT-
HOLZER FUND L.P., GEO-CAPITAL
PARTNERS, INC., FINGERHUT-HOLZER
THE WAVERYLY I, LLC., FINGERHUT-
HOLZER THE WAVERYLY II, LLC.

               Defendants.
--------------------------------------------------------X

**FILED BY ECF**

**09-CV-10429  (VSB)**

## JOHN RAPILLO AND HEIDI RAPILLO's MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

MARSHALL, CONWAY,
& BRADLEY, P.C.
45 Broadway
New York, NY  10038
(212) 619-4444
Attorneys for Plaintiffs
*John Rapillo and Heidi Rapillo*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ……………………………………………………...…ii

TABLE OF AUTHORITIES ………...……………………………………………….........iii

STATEMENT OF FACTS……………………………………………………….......................1

APPLICABLE LEGAL STANDARD………..…………………………….....................…8

ARGUMENT…………………………………………………………………………….....8

    I.      THERE ARE SIGNIFICANT QUESTIONS OF FACT WHICH PRECLUDE SUMMARY JUDGMENT……………………………………………….…………..8

          A.     Defendants engaged in an active partnership. ……………………..…..9

          B.     Fingerhut will not be able to escape personal liability by hiding behind corporate veil of Fingerhut/Holzer LLC………………………………10

          C.     Plaintiffs have   valid claim under the theory of *respondeat superior*……………………………………………………………….11

          D.     Plaintiffs has a valid claim under the controlling persons theory…………………………………………………….…..…13

    II.     PLAINTIFFS HAVE A VALID CLAIM ALLEGING FRAUD UNDER SECTION 10B AND RULE 10b-5…………………..…………………………....15

    III.    PLAINTIFFS HAVE A VALID CLAIM ALLEGING FRAUD UNDER THE COMMON LAW OF THE STATE OF NEW YORK……………..….………17

    IV.    FINGERHUT AIDED AND ABETTED THE FRAUD PERPETRATED BY CO-CONSPIRATOR HOLZER………………………………………………….....18

    V.     PLAINTIFFS HAVE A VALID CLAIM UNDER THE INVESTMENT ADVISERS ACT……………………………………………………………...19

    VI.    PLAINTIFFS HAVE A VALID CLAIM FOR BREACH OF FIDUCIARY DUTY…………………………………….…..…………………………......21

    VII.   PLAINTIFFS HAVE A VALID CLAIM FOR CONVERSION………………..23

CONCLUSION……………………………………………………………………………24

## PRELIMINARY STATEMENT

Plaintiffs, John Rapillo and Heidi Rapillo (collectively the "Rapillos"), respectfully submit this memorandum of law in opposition to defendants' Barry Fingerhut ("Fingerhut"), Fingerhut-Holzer Partners LLC ("Fingerhut/Holzer LLC" or "LLC"), Fingerhut-Holzer Equities, Inc., Fingerhut Holzer, Inc., Fingerhut-Holzer Fund L.P., Geo-Capital Partners, Inc. ("Geo-Capital"), Fingerhut-Holzer The Waverly I, LLC. ("Waverly I"), Fingerhut-Holzer The Waverly II, LLC.'s ("Waverly II") (collectively "Defendants") motion for summary judgment against the Rapillos.

In this action, the Rapillos seek damages incurred as a result of the fraud committed by the defendants. Specifically, the Rapillos have filed a claim under the following causes of action: Rules 10b and 10b-5 of the Exchange Act; common law fraud, Investment Advisers Act, breach of a fiduciary duty and conversion. *See* R. Conway, Dec. Ex. 1; *see also* R. Conway, Dec. Ex. 2; R. Conway, Dec. Ex. 3.

This memorandum is submitted in opposition to defendants' motion  for summary judgment. The essence of defendants' motion is that Fingerhut and Fingerhut/Holzer LLC was in no way complicit with the fraud perpetrated by Holzer. However, as this memorandum will show, Fingerhut and Holzer are parties who are equally at fault for the fraud committed against the Rapillos. Defendants' arguments are specious, based on mere conjecture, and raise significant questions of fact. Fingerhut and Holzer admit to being partners who operated Fingerhut/Holzer LLC together as an investment business. It is further conceded by defendants that the Rapillos' money was stolen and converted by the defendants.

# TABLE OF AUTHORITIES

**CASES**

*Abrahamson v. Fleschner*, 568 F.2d 862 (2d Cir. 1977)................................... . .20

*Alvarez v. Prospect Hosp.*, 68 N.Y.2d 320, 508 N.Y.S.2d 923 (1986) ....................8

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct.

2505, 91 L.Ed.2d 202 (1986)............................................................................8

*Bankamerica Corp.*, 219 F.3d 79 (2d Cir.2000)..................................... ............18

*Bogart v. Shearson Lehman Bros.*, No. 91 CIV. 1036

(LBS)NG, 1993 WL 33643,  (S.D.N.Y., 1993)...........................................19, 20

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).... . . . ........8

*Ciccone v. Hersh*, 530 F. Supp. 2d 574, 577 (S.D.N.Y. 2008)

*aff'd*, 320 F. App'x 48 (2d Cir. 2009) .......................................................22

*Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 470 (S.D.N.Y. 2001)........................18

*Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775 (2d Cir.2003)..................8

*Donahue v. Windsor Locks Bd. of Fire Commissioners*, 834 F.2d 54 (2d Cir.1987).............8

*Esplin v. Hirschi*, 402 F.2d 94, 103 (10 Cir. 1968), cert. denied, 394 U.S. 928 (1969)............20

*Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595 (2d Cir.1991) ...........................21

*Freeman v Complex Computing Co., Inc.*, 119 F.3d 1044 (2d Cir. 1997)........................11

*Gordon v. Burr*, 506 F.2d 1080, 1085 (2d Cir.1974)....................................14

*Guilder v. Corinth Constr. Corp.*, 235 AD2d 619, 651 NYS2d 706, 707 (3d Dept 1997).........11

*Hateley v. SEC*, 8 F.3d 653, 656 (9th Cir.1993) ..........................................14

*Herpich v. Wallace*, 430 F.2d 792, 815 (5th Cir. 1970) ....................................20

*Idrees v. American University of the Caribbean*, 546

F.Supp. 1342, 1346 (S.D.N.Y.1982). ...................................................18

*Isik Jewelry v. Mars Media, Inc.*, 418 F. Supp. 2d 112, 129-30 (E.D.N.Y. 2005)............11, 12

*ITEL Containers Int'l Corp. v. Atlanttrafik Express Service, Ltd.*,

909 F.2d 698, 701 (2d Cir.1989) ...................................................12

*Kassover v. UBS AG*, 619 F. Supp. 2d 28, 32-33 (S.D.N.Y. 2008) ........................19

*Kidz Cloz, Inc. v. Officially For Kids, Inc.*, No. 00 CIV. 6270 (DC),

2002 WL 392291, (S.D.N.Y., 2002) ...............................................9

*King Cnty., Washington v. IKB Deutsche Industriebank AG*, 7
51 F. Supp. 2d 652, 663 (S.D.N.Y. 2010) ...........................................................18

*Lanza v. Drexel & Co.*, 479 F.2d 1277, 1306 (2d Cir. 1973) (en banc)..........................15

*Ledy v. Wilson*, 38 AD3d 214, 215 (1st Dept 2007) ...........................................10

*Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb*, 767 F.Supp.
1220, 1231 (S.D.N.Y.1991) ...............................................................21

*Marbury Mgmt., Inc. v. Kohn*, 629 F.2d 705, 711 (2d Cir.1980) .....................11, 13, 14

*Miller v. Grigoli*, 712 F. Supp. 1087, 1095 (S.D.N.Y. 1989) ...................................18

*Moses v. Burgin*, 445 F.2d 369 (1 Cir.), cert. denied, 404 U.S. 994 (1971) ...................20

*Nigerian Nat'l Petroleum Corp. v. Citibank, N.A.*, No. 98 Civ. 4960(MBM), 1999 WL 558141,
(S.D.N.Y. 1999) ..................................................................................19

*N. Am. Knitting Mills, Inc. v. Int'l Women's Apparel, Inc.*, No. 99
CIV. 4643 (LAP), 2000 WL 1290608, (S.D.N.Y. 2000)...........................................10

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) ...........................................15, 16

*Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83 (2d Cir.2004).............8

*Palmetto Partners, L.P. v. AJW Qualified Partners, LLC*, 83 A.D.3d 804,
921 N.Y.S.2d 260, (2011) ...................................................................21

*Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1172 (1st Cir.1995) ........................12

*Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, (2d Cir. 978)
amended sub nom. *Rolf v. Blyth Eastman Dillon & Co.*, No. 77-7104, 1978
WL 4098 (2d Cir. May 22, 1978)........................................................15, 16, 18

*Rut v. Young Adult Inst., Inc.*, 74 A.D.3d 776, 901 N.Y.S.2d 715 (2010)........................21

*S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472-73 (2d Cir. 1996) .......................14

*SEC Investor Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293
(Bankr. S.D.N.Y. 1999)...................................................................10, 16

*SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 812 (2d Cir.1975). ............................13

*Simon v. Weaver*, 327 F. Supp. 2d 258, 262 (S.D.N.Y. 2004)...................................15

*State Street Co. v. Ernst*, 278 N.Y. 104, 112, 15 N.E.2d 416, 418-19 (1938).....................18

*Tokio Marine & Fire Ins. Co. v. Fed. Marine Terminal, Inc.*, 397 F. Supp. 2d 530, 533-34 (S.D.N.Y.
2005) ...........................................................................................8

*Vigilant Insurance Company of America v. Housing Authority of the City of*

*El Paso, Texas,* 87 N.Y.2d 36, 44, 637 N.Y.S.2d 342, 660 N.E.2d 1121 (1995)..............23

*Williams v. R.H. Donnelley, Corp.,* 368 F.3d 123, 126 (2d Cir.2004) ..........................8

## STATUTES

Fed.Rules Civ.Proc.15(b)....................................................................................13

Fed.R.Civ.P. 56...................................................................................................9

*Investment Advisers Act of 1940,* §§ 206(1–3), 209(e) *as amended* 15 U.S.C.A.

§§ 80b–6(1–3), 80b–9(e)... ..............................................................................20

*Securities Exchange Act of 1934,* § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b–5.....15

*Securities Exchange Act of 1934,* § 20(a), 15 U.S.C.A. § 78t(a).17 C.F.R. § 240.12b–2.......13

## **RELEVANT FACTS**

The plaintiffs, Heidi and John Rapillo, are residents of Westchester County, in the state of New York. *See* R. Conway, Dec. Ex. 1. John Rapillo is a disabled interior designer, and Heidi Rapillo is a hospital admissions officer. *See* R. Conway, Dec. Ex. 6. John Rapillo was the interior decorator for David Holzer and his wife Leslie Holzer prior to the events that create the basis for the Rapillos claim against the defendants. *See* R. Conway, Dec. Ex. 5 at 67. As a result of their working together Holzer befriended the Rapillos, and ultimately defrauded the Rapillos through a series of investments made with the entity defendants. *See* R. Conway, Dec. Ex. 5 at 67-68.

Barry Holzer has an extensive history in the financial industry, including a twenty-eight year career at  Brean Murray Foster Securities as the head of over-the-counter trading. *See* R. Conway, Dec. Ex. 5 at 10-13. During his time at Breen Murray, he met the co-defendant, Barry Fingerhut, who was a partner at GEO Capital. *See* R. Conway, Dec. Ex. 5 at 17. Ultimately Fingerhut and Holzer determined to start a business together named Fingerhut Holzer Partners LLC located at 399 Park Avenue in the City and State of New York. *See* R. Conway, Dec. Ex. 4 at 29; R. Conway, Dec. Ex. 5 89-90. Both Fingerhut and Holzer stated that the LLC was to be a partnership, wherein each individual contributed to the LLC through their investment expertise. *See* R. Conway, Dec. Ex. 4 11-14, 24-25; R. Conway, Dec. Ex. 5 at 37.

Fingerhut was responsible for finding and promoting potential investment ideas. This includes all of the properties invested in by the Rapillos. *See* R. Conway, Dec. Ex. 4 at 27-29. Additionally, Fingerhut solicited clients to invest in these properties through the LLC. *See* R. Conway, Dec. Ex. 5 at 45. Specifically, when Fingerhut was asked about the division, he stated that Holzer did the trading while he would be the investor. *See* R. Conway, Dec. Ex. 4 at 27-29.

Despite the various entity names Fingerhut concedes that all the entity defendants are essentially the same. *Id.* at 50.

Each of the parties had an equal division of interest in the LLC, however, the initial investment to form the partnership was not equal. *See* R. Conway, Dec. Ex. 4 at 47, 54; R. Conway, Dec. Ex. 5 at 37; R. Conway, Dec. Ex. 19. Fingerhut invested substantially more than Holzer in the formation of the LLC, evidenced by the balance sheet which shows the contributions to the LLC, Fingerhut contributed over $17,000,000, while Holzer contributed almost nothing. *See* R. Conway, Dec. Ex. 4 at 47. Regarding the inequity, Fingerhut stated: "I didn't ask him for a specific number" and the partnership took legitimate business form. *Id.*

Together, Fingerhut and Holzer participated in a clandestine effort to purchase land in the Hudson Valley that would be consolidated and packaged for parties with international funding. *See* R. Conway, Dec. Ex. 4 at 104-114; R. Conway, Dec. Ex. 14; R. Conway, Dec. Ex. 15. As a result, 12,000,000.00 was transferred by Fingerhut into the organization and Holzer without any documentation or proof of transfer, which Fingerhut claims is a "big mistake." *See* R. Conway, Dec. Ex. 4 at 82, 86, 103-104. Further, Fingerhut directly aided in Holzer's fraud by lending Holzer substantial amounts of money which then allowed Holzer to lure potential clients using this façade of wealth.

It is critical to note that during the prosecution of David Holzer, the majority of the records showing the fraud were seized by the District Attorneys Office of the County of New York. Despite repeated efforts and requests by this office  the District Attorney has refused to turn over any of these records.

Fingerhut and Holzer were united in the illicit use of those funds for purposes that are, to this date, unclear. Fingerhut readily admits in that a failure to create a record of a movement of

money was a "huge mistake." *See* R. Conway, Dec. Ex. 4 at 82, 111. Further, it is admitted that the LLC was losing a significant amount of money. *See* R. Conway, Dec. Ex. 4 at 112-113. Ultimately, it is uncontested that Holzer defrauded three different families of millions of dollars in an effort to reach a contributory level that was more equal to Fingerhut. R. Conway, Dec. Ex. 5 at 117.

## THE PLAINTIFFS

In 2001, John Rapillo sustained a disastrous injury while working as an interior designer, which resulted in severe fractures of the neck leaving him in a halo for months and burdening him with continuous pain and disability. R. Conway, Dec. Ex. 6 at 2.  Ultimately, Rapillo engaged the offices of Marshall Conway and Bradley P.C. to prosecute a personal injury which eventually resulted in a settlement sum of $2,500.000.00. *See* R. Conway, Dec. Ex. 6 at 4a. David Holzer became aware of this award, and invited the Rapillos to participate in the Fingerhut/Holzer LLC. *See* R. Conway, Dec. Ex. 4 at 68-70; R. Conway, Dec. Ex. 6 at 4a. While Holzer was luring the Rapillos into the LLC, he was also taking substantial funds from other parties including Michael and Barbara Zachman who lost $1,773,283.33 and Mr. Barry Passar, who lost over $150,000.00. *See* R. Conway, Dec. Ex. 5 at 118; R. Conway, Dec. Ex. 6 at 13.

Initially, Holzer convinced the Rapillos to invest in an ill-fated project in Jacksonville, Florida known as the Waverly I. *See* R. Conway, Dec. Ex. 5 at 73-75, 90; R. Conway, Dec. Ex. 4 at 54-56, 61. R. Conway, Dec. Ex. 6 at 4b. The project, a residential complex, was initiated by Fingerhut/Holzer LLC and completely under the auspices of the partnership. *Id.*; R. Conway, Dec. Ex. 5 at 76,84-85. Fingerhut/Holzer LLC promised the Rapillos that "it [was] a safe investment that will triple your money." R. Conway, Dec. Ex. 6 at 4b.

Upon the explicit instruction of Fingerhut/Holzer employee Jackie Cohen, a draft of $300,000.00 was sent by the Rapillos on October 19, 2005 to the law firm of Foley & Lardner, which acted as the repository for the money involved in the investments. *See* R. Conway, Dec. Ex. 4 at 33, 54; R. Conway, Dec. Ex. 5 at 92-93; R. Conway, Dec. Ex. 6 at 6; R. Conway, Dec. Ex. 4.

There is no question that the Rapillos were clients of the Fingerhut/Holzer partnership, and that both Fingerhut and Holzer were vested with the authority or apparent authority to act on behalf of the partnership. *See* R. Conway, Dec. Ex. 4 at 32-37; R. Conway, Dec. Ex. 6 at 18. Holzer then recommended that the Rapillos send $600,000 more to invest in a movie theatre intended to be built in Boca Raton, Florida. *See* R. Conway, Dec. Ex. 6 at 7. On or about December 15, 2005, $600,000.00 was sent by the Rapillos to Holzer's personal account also upon the direction of Lisa Cohen of the Fingerhut/Holzer office. R. Conway, Dec. Ex. 5 at 98-100; R. Conway, Dec. Ex. 9. $200,000.00 of this money (received by Holzer from the Rapillos) was immediately transferred to Fingerhut, which he accepted. *See* R. Conway, Dec. Ex. 4 at 93-94; R. Conway, Dec. Ex. 6 at 8, 9. Thus, Fingerhut participated directly in the Fingerhut/Holzer fraud and converted the Rapillos money.

With a continuing need of money, Fingerhut/Holzer made a recommendation to the Rapillos to invest in another portion of the same Jacksonville development, also known as the Waverly II. *See* R. Conway, Dec. Ex. 6 at 9. On January 31, 2006, at the directions of Fingerhut/Holzer another $200,000.00 investment was wired directly to the personal account of David Holzer. *See* R. Conway, Dec. Ex. 4 at 97-100; R. Conway, Dec. Ex. 6 at 9; R. Conway, Dec. Ex. 10.

4

Thereafter, another investment vehicle introduced by Fingerhut/Holzer was a stock known as "V. Campus." *See* R. Conway, Dec. Ex. 4 at 42-43; R. Conway, Dec. Ex. 6 at 10. V. Campus, a for-profit program, stood for Virtual Campus, a progenitor of the present virtual universities being operated online. *Id.* On May 23, 2006, per the advice of David Holzer and the directions of Fingerhut Holzer LLC, an $800,000.00 draft was sent by the Rapillos directly to Holzer for the purchase of V. Campus stock. *See* R. Conway, Dec. Ex. 5 at 110; R. Conway, Dec. Ex. 4 at 99; R. Conway, Dec. Ex. 6 at 10; R. Conway, Dec. Ex. 11. Interestingly, on the following day, May 24, 2006, both Holzer *and* Fingerhut (using the Rapillos' money) made purchases of V. Campus stock worth approximately $500,000.00. R. Conway, Dec. Ex. 4 at 99-100. Ultimately, **Holzer would deed over the $500,000.00 worth of V. Campus stock purchased with the Rapillos' money**, thereby directly benefitting Fingerhut. *See* R. Conway, Dec. Ex. 12; R. Conway, Dec. Ex. 13; R. Conway, Dec. Ex. 21. (emphasis added).

It is important to note, that while the fraud was being perpetrated, Fingerhut/Holzer LLC sent the Rapillos annual K1s exhibiting their investment status with the partnership. *See* R. Conway Dec. Ex. 17; R. Conway Dec. Ex. 18; R. Conway Dec. Ex. 6 at 4b. Additionally, Fingerhut spoke to the Rapillos multiple times and even sent a letter to the Rapillos demanding greater "investments". *See* R. Conway, Dec. Ex. 7 at 4; R. Conway, Dec. Ex. 19. *See* R. Conway, Dec. Ex. 6 at 6; R. Conway, Dec. Ex. 20. Specifically, when Heidi Rapillo contacted Fingerhut and indicated she wanted to cash out their investments, Fingerhut expressed anger and stated that if they cashed out, "[the Rapillos] would get ten cents on the dollar." *See* R. Conway, Dec. Ex. 7 at 3. Fingerhut then contacted Heidi Rapillo again and demanded additional funds for the Waverly project. *See* R. Conway, Dec. Ex. 7 at 4. When Rapillo indicated that there no

additional funds to invest, Fingerhut expressed anger and stated "I'll zero you out." *See* R. Conway, Dec. Ex. 7 at 4.

Ultimately, the Fingerhut/Holzer fraud unraveled when Holzer issued a check in the sum of $33,000,000.00 in a transaction that had no funds behind it. *See* R. Conway, Dec. Ex. 4 at 117-118. The fraudulent transaction was noted by J.P. Morgan which immediately froze the accounts. *Id.* Fingerhut sought criminal counsel immediately and availed himself of the office of Proskauer Rose LLP. and Mr. Thomas Wilson. *See* R. Conway, Dec. Ex. 4 at 118. It was determined that Mr. Fingerhut would blame Holzer exclusively for the fraud perpetrated. *See* R. Conway, Dec. Ex. 4 at 123. Additionally, a former investigator for the District Attorneys office, Mr. Tobey Thatcher who presently runs an investigative firm, was hired to help Fingerhut prepare his documentary history. *See* R. Conway, Dec. Ex. 4 at 49. Thatcher assisted Fingerhut and Holzer in creating an Assignment of Equity which called for Holzer to surrender ownership to Fingerhut of any and all assets, including the V. Campus stock that had been purchased with Rapillo money. *See* R. Conway, Dec. Ex. 4 at 101-102, 142-144; R. Conway, Dec. Ex. 12; R. Conway, Dec. Ex. 13. Thereafter, Thatcher contacted former colleagues at the district attorneys office and helped introduce Fingerhut as a victim and Holzer as the sole perpetrator. *See* R. Conway, Dec. Ex. 4 at 146.

Holzer ultimately plead guilty to a series of crimes involving the theft of money from innocent investors and was sentenced to five to fifteen years in prison. *See* R. Conway, Dec. Ex. 6 at 15-16; R. Conway, Dec. Ex. 5 at 102-106; R. Conway, Dec. Ex. 16. He served approximately four years at the New York State Detention Facility at Coxsackie, before being released. *See* R. Conway, Dec. Ex. 16. Interestingly, according to Fingerhut, the initial transfer of funds between Fingerhut and Holzer predates  the creation of Fingerhut/Holzer LLC. *Id.* at 83-

84. Fingerhut indicates that he did not know the absence of Holzer's financial contribution until 2007, a full year after the distributions of Rapillos' money into the Fingerhut Holzer enterprises. *Id.* at 88-89.

Yet, Fingerhut also acknowledged that Holzer transferred $200,000 to him immediately after the Rapillos transferred the $600,000.00 to Holzer:

> Q. Did Mr. Fingerhut transfer $200,000 to your personal account on or about December 15, 2005?
> A. If its in the statement by DA then I would say yes. I mean I can't tell you off hand.

*Id.* at 93-94.

Additionally, Fingerhut readily admits that Holzer transferred $500,000 of V. Campus stock that Holzer had purchased with Rapillo money to him. *Id.* at 101-102; R. Conway Dec. Ex. 21. Continuing in his acts of fraud, Fingerhut purchased portions of investments, clandestinely not reviewing true ownership and admits to being a hidden investor, while publicly fronting Mr. Holzer and privately sustaining this effort. When told that this constitutes fraud, Fingerhut replied: **"I'll tell you again, this was a mistake alright."** *Id.* at 111-113 (emphasis added).

As a result of the fraud perpetrated by Fingerhut/Holzer and the entity defendants, the Rapillos lost $1,900,000.00 of their money. *See* R. Conway, Dec. Ex. 6 at 4b, 17.

## APPLICABLE LEGAL STANDARD

As this Court is well aware, under Federal Rules of Civil Procedure 56(c), summary judgment may be granted only if all the submissions taken together show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Additionally, a dispute is

genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also Overton v. N.Y. State Div. of Military & Naval Affairs,* 373 F.3d 83, 89 (2d Cir.2004).

In assessing whether summary judgment is proper, the Court must construe the evidence in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant. *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir.2004) (quoting *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir.2003).

Additionally, the moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323; *Tokio Marine & Fire Ins. Co. v. Fed. Marine Terminal, Inc.*, 397 F. Supp. 2d 530, 533-34 (S.D.N.Y. 2005).

Thus, a movant's failure to make a *prima facie* case requires a denial of the motion, regardless of the sufficiency of the opposing papers *Alvarez v. Prospect Hosp.*, 68 N.Y.2d 320, 508 N.Y.S.2d 923 (1986); *See* Fed.R.Civ.P. 56; *Donahue v. Windsor Locks Bd. of Fire Commissioners,* 834 F.2d 54, 57 (2d Cir.1987).

As evidenced below, there are significant questions of fact which remain, and preclude a finding for summary judgment. Accordingly, defendants' motion for summary judgment must be denied in its entirety.

## ARGUMENT

## I.   THERE ARE SIGNIFICANT QUESTIONS OF FACT WHICH PRECLUDE SUMMARY JUDGMENT.

Defendants broadly allege that there is "no factual basis for any claims against Barry Fingerhut or any of the entity defendants." Further, defendants make the unsubstantiated

assertion that "there is no dispute about the fact that Barry Fingerhut nor any of the entity defendants made any representations at all to the Rapillos." It should be noted that defendants fail to actually cite to any admissible evidence in the record to support these accusations. Rather, defendants' entire argument regarding the lack of a factual basis for plaintiffs' claim appears to be based on defendants' own conjecture. Given the extremely high threshold required for summary judgment, defendants simply have not refuted any of plaintiffs' claims legitimately. This is especially true in light of the overwhelming evidence which shows that Fingerhut was personally involved in soliciting and maintaining the money of the Rapillos and thus the entity defendants (as well as Fingerhut) are liable for the damages caused to the Rapillos.

## A. Existence of an Active Partnership

The concepts of partnership and joint venture are highly interrelated under New York law, and "the legal ramifications of a joint venture are equivalent to those of a partnership." *ITEL Containers Int'l Corp. v. Atlanttrafik Express Service, Ltd.,* 909 F.2d 698, 701 (2d Cir. 1989). The elements required to establish either a joint venture or a partnership are substantially similar. As this Court held in *Kidz Cloz, Inc. v. Officially For Kids, Inc.*, No. 00 CIV. 6270 (DC), 2002 WL 392291, (S.D.N.Y. 2002), to establish the existence of a partnership, a plaintiff must show: "(1) the parties' sharing of profits and losses; (2) the parties' joint control and management of the business; (3) the contribution by each party of property, financial resources, effort, skill, or knowledge to the business; and (4) the parties' intention to be partners." *See North Am. Knitting Mills, Inc. v. Int'l Women's Apparel, Inc.,* 99 Civ. 4643(LAP), 2000 U.S. Dist. LEXIS 13139, at 3 (S.D.N.Y 2000). Additionally, intent to become partners may be inferred from the fact that the partners agreed to conduct business as partners. *Kidz Cloz, Inc. v. Officially For Kids, Inc.,* No. 00 CIV. 6270 (DC).

Here, there is clear and direct evidence that Fingerhut and Holzer operated their business as a partnership. *See* R. Conway, Dec. Ex. 4 at 47; R. Conway, Dec. Ex. 5 at 37. Both parties concede that they set out to do business together as a partnership. They operated to the public as a partnership with an office that advertised the Fingerhut/Holzer LLC name. *See* R. Conway, Dec. Ex. 4 at 47; R. Conway, Dec. Ex. 5 at 37.

Moreover, both parties contributed funds and individual expertise to the LLC. Fingerhut indicates that Holzer was responsible for the trading while Fingerhut created or discovered the investment opportunities. *See* R. Conway, Dec. Ex. 4 at 27-29. It is clear by their direct admissions that the parties intended to be partners with the stated goal of making money through the investment process. *See* R. Conway, Dec. Ex. 5 at 43.

## B. Fingerhut will not be able to hide behind the corporate veil of Fingerhut/Holzer LLC

It is important to note that can Fingerhut will not be able to seek protection by hiding behind the guise of the LLC. Piercing the corporate veil is an equitable doctrine, and is necessary to prevent fraud and the abuse of corporate separateness. *SEC Investor Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293 (Bankr. S.D.N.Y. 1999).

In fact, New York courts are highly reluctant to dispose of veil piercing claims on summary judgment. *See* e.g. *Ledy v. Wilson*, 38 AD3d 214, 215 (1st Dept 2007). Moreover, for veil-piercing purposes, New York courts have recognized a doctrine of equitable ownership. *Freeman v Complex Computing Co., Inc.*, 119 F3d I 044, 1051 (2d Cir. 1997). This doctrine holds that an individual who exercises sufficient control over the corporation may be deemed an "equitable owner," even in the event that the individual is not a shareholder of the corporation. *See* e.g. *Guilder v. Corinth Constr. Corp.*, 235 AD2d 619, 651 NYS2d 706, 707 (3d Dept 1997).

Thus, if Fingerhut attempts to personally hide behind the LLC, the corporate veil will ultimately be pierced. Fingerhut was personally intertwined with Fingerhut/Holzer LLC and it

impossible to trace what happened to the Rapillos' money after it was given to Holzer. *See* R. Conway, Dec. Ex. 4 at 113-114; R. Conway, Dec. Ex. 7 at 11-17. It is likely that Holzer put these funds toward the partnership's investment vehicles, or even gave the money directly to Fingerhut. *See* R. Conway, Dec. Ex. 5 at 114. Further, the defendants fail to claim, with any specificity, what happened to the Rapillos money aside from conceding that it did in fact disappear. *Id.*

## C. *Respondeat Superior*

Defendants claim that because the Rapillos have not previously alleged liability under the theory of *respondeat superior*, that plaintiffs will be unable to rely on this theory going forward. However, defendants misapprehend the law and the Second Circuit's consistent rulings regarding the applicability of this doctrine even when previously unplead.

The Second Circuit has held that a Court *will* consider a plaintiff's argument regarding *respondeat superior* liability where there is evidence presented which implicates that theory, **even where a plaintiff failed to previously allege its elements in the complaint.** *See Marbury Mgmt., Inc. v. Kohn,* 629 F.2d 705, 711 (2d Cir.1980) (emphasis added). Specifically, the Court in *Marbury* stated:

> "While plaintiffs have not denominated their argument in this court and in the district court a *respondeat superior* argument, and the complaint did not contain the traditional allegation that [the broker] made representations relied upon in the course of his employment with [the brokerage house], the evidence upon which plaintiffs rely in this court, as in the district court, and the allegations of fact made in the complaint are alike completely descriptive of the transactions and of the roles of the actors in them, and they are the evidence and the allegations relevant to a determination of the *respondeat superior* issue...." *Id.*; *see Laro, Inc. v. Chase Manhattan Bank,* 866 F.Supp. 132, 139 (S.D.N.Y.1994)

Additionally, the Eastern District in *Isik Jewelry v. Mars Media, Inc.,* 418 F. Supp. 2d 112, 129-30 (E.D.N.Y. 2005), held that *respondeat superior* may be utilized so long as the

defendants are on full notice of the circumstances which give rise to plaintiff's theory under *respondeat superior*. 629 F.2d at 712.

Further, Courts have held that a previously unplead theory of *respondeat superior* may be utilized if the opposing party effectively engages the claim. *Id.* at 129-30; *Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1172 (1st Cir.1995).

Here, the defendants were placed on notice of the claim by disputing its applicability in a "pretrial memorandum." *Isik Jewelry v. Mars Media, Inc.*, 418 F. Supp. 2d at 130. Moreover, the absolute proof that defendants were impliedly on notice of this claim is that the defendants' motion for summary judgment specifically disputes the applicability of *respondeat superior* by stating that plaintiffs have failed to previously plead the theory of liability and now cannot seek its relief. Defendants were also on notice of this claim based on the facts alleged in the summons and complaint, and that plaintiffs would likely seek relief under *respondeat superior*. *See* R. Conway, Dec. Ex. 1.

In the event that this Court finds Fingerhut was not directly attributable to the fraud committed, the plaintiffs certainly have a valid claim under *respondeat superior*. Fingerhut and Holzer both admit that fraud was committed and that the Rapillos money was stolen. *See* R. Conway, Dec. Ex. 5 at 11; R. Conway Ex. 4 at 111-113. Moreover, it is clear that the fraud was committed under the guise of the Fingerhut/Holzer LLC, and Fingerhut was a controlling member of the LLC who provided most (if not all) of the capital contribution to the LLC and had conversations with the Rapillos. *See* R. Conway, Dec. Ex. 4 at 11, 111-13; R. Conway Dec. Ex. 7 at 3.

Thus, plaintiffs are both entitled to assert liability under *respondeat superior* and should prevail given the defendants actions.

**D. Controlling Persons Theory**

Additionally, plaintiffs can seek recover under a Controlling Persons theory. Similar to the theory of *respondeat superior*, liability under a controlling person theory need not be previously alleged. Moreover, the doctrine of controlling person does not necessarily supplant the doctrine of respondeat superior. *Marbury Mgmt., Inc. v. Kohn*, 629 F.2d 705, 713 (2d Cir. 1980). Under the theory of controlling person liability, a plaintiff may allege a primary § 10(b) violation by a person controlled by the defendant, and culpable participation by the defendant in the perpetration of the fraud. *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63 (2d Cir. 2001). Securities Exchange Act of 1934, § 20(a), 15 U.S.C.A. § 78t(a).17 C.F.R. § 240.12b–2.

Specifically, the statute provides:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable..." 15 U.S.C. § 78t(a). *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 77 (2d Cir. 2001).

In *Marbury*, the Second Circuit found that despite plaintiff's failure to allege that defendant was liable *either* as a controlling person or as a principal under the *respondeat superior doctrine*, the Court was still free to assess liability under the theories as long as the evidence, shows the factual elements of the transactions involved and thus invokes the application of the law's principles. *Marbury Mgmt., Inc. v. Kohn*, 629 F.2d 705, 712 (2d Cir. 1980); Fed.Rules Civ.Proc.15(b).

It is important to note that liability under the doctrine of controlling persons is a separate inquiry from that of primary liability and provides an alternative basis of culpability. *See SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 812 (2d Cir.1975). A plaintiff may allege a primary §10(b) violation by a person controlled by the defendant, *and* culpable participation by the defendant in

the perpetration of the fraud. *See SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir.1996).

Additionally, the Court in *SEC. v. First Jersey Sec., Inc.* held that a plaintiff must show a primary violation by the controlled person and control of the primary violator by the targeted defendant, in addition to showing that the controlling person was assisted in the fraud committed by the controlled individual. 101 F.3d at 1470-75. *See Marbury Management, Inc. v. Kohn,* 629 F.2d at 715–16 ; *Gordon v. Burr,* 506 F.2d 1080, 1085 (2d Cir.1974). The power to "direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise" is sufficient to show control for the purpose of this doctrine. *SEC. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472-73 (2d Cir. 1996); 17 C.F.R. § 240.12b–2.

Further, the doctrine of controlling persons is available as an enforcement mechanism to "any person to whom such controlled person is liable," *see* 15 U.S.C. § 78c(a)(9), *See SEC v. Management Dynamics, Inc.,* 515 F.2d 801, 812 (2d Cir.1975).

A defendant liable under the controlling persons theory will be held joint and severally liable. *See, e.g., Hateley v. SEC*, 8 F.3d 653, 656 (9th Cir.1993). Here, in the event that Fingerhut is not held directly, it is clear that Fingerhut can be considered a controlling person under Section 20(a). The fraud was committed by Holzer, by his own admission, and Fingerhut readily controlled Holzer's actions in the partnership. *See* R. Conway, Dec. Ex. 4 at 27-29, 47; R. Conway, Dec. Ex. 5 at 114-117.

Fingerhut readily admits that he was the head of the partnership and that he was the individual who came up with **all** of the investment ideas. *See* R. Conway, Dec. Ex. 4 at 27-29, 47. Moreover, Fingerhut states that he put nearly all of the capital into Fingerhut/Holzer LLC. *Id.*

Thus, it is axiomatic that Fingerhut was in a position to control Holzer for the purposes of the partnership. Under the controlling persons theory,  Fingerhut must be held jointly and severally liable for all damages caused to the Rapillos.

## II. Fraud Under 10b and 10b-5.

To state a claim for fraud under Rule § 10(b) and Rule 10b–5, a plaintiff must allege (1) a misrepresentation or omission of a material fact in connection with the purchase or sale of a security; (2) scienter on the part of the defendant; (3) the plaintiff's reliance on the misrepresentation; and (4) damage to the plaintiff resulting from the misrepresentation. *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 69 (2d Cir.2001); *Simon v. Weaver*, 327 F. Supp. 2d 258, 262 (S.D.N.Y. 2004); *Securities Exchange Act of 1934*, § 10(b), 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b–5.

Plaintiffs can establish scienter in a securities fraud action by showing either that  the defendant acted with the required state of mind and knew of the fraud being committed, or by showing that a defendant acted recklessly. *Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000); *In re Scholastic Corp. Sec. Litig.*, 252 F.3d at 69; *see also* Securities Exchange Act of 1934, § 21D(b)(2), as amended, 15 U.S.C.A. § 78u–4(b)(2).

The Second Circuit stated "it is consistent with, if not demanded by, precedent in this circuit to hold that reckless conduct satisfies the scienter requirement." *Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 46 (2d Cir. 1978) amended sub nom. *Rolf v. Blyth Eastman Dillon & Co.*, No. 77-7104, 1978 WL 4098 (2d Cir. May 22, 1978); *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1306 (2d Cir. 1973) (en banc). Expanding on the premises that recklessness establishes scienter, the Second Circuit has also held that liability will attach where a plaintiff sufficiently alleges that a defendants benefitted from purported fraud, had access to information suggesting

that statements were not accurate, or **failed to check information they had duty to monitor**.
*See Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d at 46 (emphasis added); Securities Exchange
Act of 1934, § 21D(b)(2), as amended, 15 U.S.C.A. § 78u-4(b)(2). *Novak v. Kasaks*, 216 F.3d
300, 308-09 (2d Cir. 2000).

The Second Circuit has also identified "badges of fraud," which include the closeness of
relationship (here between Fingerhut and Holzer) can be used as circumstantial evidence of
actual fraudulent intent. *Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293
(Bankr. S.D.N.Y. 1999)

Here, it is well established that the defendants meet the four elements required to
establish fraud under Rule § 10(b) and Rule 10b–5. At the outset, it is clear that the
Fingerhut/Holzer lied about the nature of the investments. *See* R. Conway, Dec. Ex. 6 at 4b, 15;
R. Conway, Dec. Ex. 7 at 4. Fingerhut admits this as well as Holzer admission that he stole
money. *See* R. Conway, Dec. Ex. 5 at 11, 117; R. Conway Ex. 4 at 111-113.. The fact that he
served a prison sentence after pleading guilty to fraud is indicative of the misrepresentation made
to the Rapillos. *See* R. Conway, Dec. Ex. 5 at 117; R. Conway, Dec. Ex. 6 at 15. In fact, the
entire relationship between the Rapillos and Fingerhut/Holzer was a series of misrepresentations,
omissions of facts, and lies in an attempt to defraud the Rapillos. Additionally, the defendants
knowingly engaged in this fraud sufficient to establish the scienter required to support a claim
under Rule § 10(b) and Rule 10b–5. Fingerhut was clearly aware, if not actively involved, in the
theft of the Rapillos' funds. He admits mistakes were made. He admits to knowing about the
various properties that the Rapillos money was to be invested in, and he spoke to the Rapillos
multiple times. *See* R. Conway, Dec. Ex. 7 at 4. At one point he actually threatened Heidi

Rapillo that if she refused to place more money in the Waverly investment, that he would "zero out" their account. *Id.*

Even in the highly unlikely event that Fingerhut did not personally commit fraud, (which the Rapillos maintain), Fingerhut knew or should have known that Holzer was acting fraudulently. Fingerhut continually boasts that the LLC was essentially his business and that he was responsible for nearly all of the capital contribution, and was the sole individual responsible for creating and finding investment opportunities. *See* R. Conway, Dec. Ex. 5 at 27, 47.

It is virtually impossible that Fingerhut, with his claimed investment acumen, would not notice the money disappearing from Fingerhut/Holzer while continually wiring money to Holzer who used them for his own benefit. Either Fingerhut knew exactly what was happening or at the very least Fingerhut *should have known* what was happening under the guise of the partnership. Moreover, the Rapillos relied on the supposed expertise of Fingerhut/Holzer, Fingerhut contacted Heidi Rapillo on multiple occasions, and he sent the Rapillos annual K-1s regarding their investment status with Fingerhut/Holzer LLC. *See* R. Conway, Dec. Ex. 6 at 6. The Rapillos were assured their investments were safe. *See* R. Conway, Dec. Ex. 6 at 4b. The Rapillos suffered irreparable harm, losing $1,900,000.00, as a direct result of defendants' repeated lies. *See* R. Conway, Dec. Ex. 6 at 17.

Thus, Fingerhut, by virtue of being co-founder of Fingerhut/Holzer is responsible for the fraud that was perpetrated whether by his own actions or recklessness. It is overwhelmingly clear that the defendants meet all four elements to establish fraud under 10b and 10b-5, and thus defendants motion for summary judgment must be denied.

### III. Fraud under the common law of New York

Similar to Rule 10b and 10b-5, under New York law, the elements of common law fraud are: a material misrepresentation of an existing fact; scienter; justifiable reliance upon the

17

misrepresentation; and injury to the plaintiff as a result of such reliance. *See Idrees v. American University of the Caribbean,* 546 F.Supp. 1342, 1346 (S.D.N.Y., 1982); *Miller v. Grigoli*, 712 F. Supp. 1087, 1095 (S.D.N.Y. 1989).

Similar to Rule 10b and 10b-5 allegations, the common law tort of fraud holds that recklessness satisfies the requisite intent element of fraud. Additionally, the motive to commit fraud may be established by the incentive to earn money. *King Cnty., Washington v. IKB Deutsche Industriebank AG*, 751 F. Supp. 2d 652, 663 (S.D.N.Y. 2010). Here, the theft of the Rapillos 1.9 million dollars is more than sufficient motive necessary to entice Fingerhut/Holzer to commit fraud.

Thus, for the same exact reasons that the defendants were liable under Rule 10b and 10b-5, defendants are also liable under New York common law.

## IV. Fingerhut was active in aiding and abetting the fraud committed by Holzer

To state a claim for aiding and abetting fraud under New York law, a plaintiff must plead facts showing: (1) the existence of a fraud; (2) defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission. *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 470 (S.D.N.Y. 2001); *Wight v. Bankamerica Corp.*, 219 F.3d 79, 91 (2d Cir.2000). The existence of fraud is established above.

Similar to 10b and 10b-5 fraud, recklessness may also establish the scienter element required to show that a defendant was aiding and abetting the violation of another defendant. *Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 47 (2d Cir. 1978) *amended sub nom. Rolf v. Blyth Eastman Dillon & Co.*, No. 77-7104, 1978 WL 4098 (2d Cir. May 22, 1978). In *Rolf*, the Court held that recklessness exists where the danger is either known to the defendant or so

obvious that the defendant must have been aware of it. *Id. See State Street Co. v. Ernst*, 278 N.Y.

104, 112, 15 N.E.2d 416, 418-19 (1938).

Additionally, to establish aiding and abetting the actor rendered substantial assistance in

the perpetrated fraud. New York Courts have held that "substantial assistance" exists where a

defendant assists, helps conceal, or by virtue of failing to act when required to do so enables the

fraud to proceed." *Nigerian Nat'l Petroleum Corp. v. Citibank, N.A.,* No. 98 Civ. 4960(MBM),

1999 WL 558141, (S.D.N.Y. 1999).

It has already been established that Fingerhut knew or should have known of the fraud

being perpetrated against the Rapillos. The fact that Fingerhut maintained his silence and did no

due diligence, while Holzer repeatedly stole the Rapillos' money is sufficient to establish the

requisite participation required to state a claim under the theory of aiding and abetting.

Thus, in the event that Fingerhut is not personally liable for Holzer and the entity

defendants egregious acts of fraud, then it is clear that Fingerhut, by maintaining his silence,

aided and abetted Holzer in the acts of fraud perpetrated against the Rapillos.

### V. Liability under Section 80-b, the Investment Advisers Act:

Defendants argue that the Rapillos cannot recover against the defendants under the

Investment Advisers Act, because the defendants "were not investment advisers within the

meaning of the Advisers Act..." However, defendants' misinterpret the the law.  Defendants

principally rely on *Kassover v. UBS AG*, 619 F. Supp. 2d 28, 32-33 (S.D.N.Y. 2008) and *Bogart

v. Shearson Lehman Bros.*, No. 91 CIV. 1036 (LBS)NG, 1993 WL 33643, (S.D.N.Y., 1993) to

assert their claim, despite both cases being entirely distinguishable from the facts at instant.

In *Kassover*, plaintiffs failed to show any facts to support their allegation that they

entered into any sort of arrangement with the defendant for the defendant to provide them with

investment advice. *Id.* Similarly, in *Bogart*, the Court found there was no agreement because there was no indication that consideration or fee would be paid for the investment advice. No. 91 CIV. 1036 (LBS)NG, 1993 WL 33643, at (S.D.N.Y., 1993). These cases show only that a contract *may* be used to establish an advisory relationship however, they are by no means proof of whether an advisory relationship exists.

Defendant relies exclusively on two cases in an attempt to obfuscate the otherwise plain meaning of the statute. The Act, in part, states:

> (11) Investment adviser means any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing, purchasing, or selling securities, or who for compensation and as part of a regular business, issues or promulgates analysis or reports concerning securities.".

*See Investment Advisers Act of 1940*, §§ 206(1–3), 209(e) *as amended* 15 U.S.C.A. §§ 80b–6(1–3), 80b–9(e).

Further, despite defendants' claims that no right of action exists under the Investment Advisers Act, yet New York Courts have routinely held that there is an *implied* right of action under the Act. *Moses v. Burgin*, 445 F.2d 369 (1 Cir.), cert. denied, 404 U.S. 994 (1971); *Herpich v. Wallace*, 430 F.2d 792, 815 (5 Cir. 1970); *Esplin v. Hirschi*, 402 F.2d 94, 103 (10 Cir. 1968), cert. denied, 394 U.S. 928 (1969). Moreover,  judicially implied rights of action also have been found under Section 14(a) of the 1934 Act, and under the Public Utility Holding Company Act of 1935. *Abrahamson v. Fleschner*, 568 F.2d 862, 872-73 (2d Cir. 1977).

Here, it has been established clear that Fingerhut/Holzer were holding themselves out to be investment advisers, and Fingerhut/Holzer operated on the premises that a fee would be taken for the advice it provided its investors. *See* R. Conway, Dec. Ex. 5 at 47-49. It is clear that the Rapillos sought out Fingerhut/Holzer as investment advisers, and both Fingerhut and Holzer held themselves out to be investment advisers. Whether Fingerhut or Holzer is more responsible for

the theft is immaterial given that they acted together, and that the Rapillos were robbed of their money by the LLC. Thus, defendants are liable under the Investment Advisers Act and defendants' motion for summary judgment must be denied.

## VI. BREACH OF FIDUCIARY DUTY

Defendants allege that a fiduciary relationship did not exist in the dealings between the Rapillos and the defendants, yet defendants fail to actually cite any evidence in the record to support this blanket assertion. As this Court is well aware, a fiduciary relationship exists "when one person is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Flickinger v. Harold C. Brown & Co.,* 947 F.2d 595, 599 (2d Cir.1991). Additionally, New York courts typically focus on whether one person has reposed trust or confidence in another who thereby gains a resulting superiority or influence over the first." *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb,* 767 F.Supp. 1220, 1231 (S.D.N.Y.1991).

To establish a breach of fiduciary duty, plaintiff need only show the following three elements: The existence of a fiduciary duty; that the defendant breached said duty; and that plaintiff suffered damages as a result of this breach. *See Palmetto Partners, L.P. v. AJW Qualified Partners, LLC*, 83 A.D.3d 804, 807-08, 921 N.Y.S.2d 260, 264-65 (2011); *Rut v. Young Adult Inst., Inc.,* 74 A.D.3d 776, 777, 901 N.Y.S.2d 715 (2010).

Here, these three elements are overwhelmingly established. Both Fingerhut and Holzer, on behalf of the Fingerhut/Holzer LLC, solicited business from the Rapillos. *See* R. Conway, Dec. Ex. 6 at 4b; R. Conway, Dec. Ex. 7 at 4. Fingerhut contacted Heidi Rapillo multiple times demanding money and threated to "zero out" their account. *See* R. Conway, Dec. Ex. 7 at 4. The Rapillos were solicited by Holzer to invest in multiple properties, almost all of them fraudulent. *See* R. Conway, Dec. Ex. 6 at 4b-7. In fact, they were *guaranteed* that the investments would

yield net gains. *See* R. Conway, Dec. Ex. 6 at 4b. Moreover, Fingerhut/Holzer sent the Rapillos annual K1s which evidenced their investor status. *See* R. Conway, Dec. Ex. 6 at 6; R. Conway, Dec. Ex. 8, R. Conway, Dec. Ex. 9. Thus, it is clear that Fingerhut/Holzer built trust in the Rapillos, and were extremely influential in the Rapillos' decision making.

It is clear that not only a fiduciary duty existed, but the defendants breached that duty. Moreover, the elements for a claim of aiding and abetting a breach of fiduciary duty under New York law are: (1) a breach by a fiduciary of obligations to another, and (2) that the defendant knowingly induced or participated in the breach. *Ciccone v. Hersh*, 530 F. Supp. 2d 574, 577 (S.D.N.Y. 2008) *aff'd*, 320 F. App'x 48 (2d Cir. 2009); *Monaghan v. Ford Motor Co.*, 71 A.D.3d 848, 897 N.Y.S.2d 482 (2010). As discussed above, substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act thereby enabling the breach to occur. *Monaghan v. Ford Motor Co.*, 71 A.D.3d 848, 850, 897 N.Y.S.2d 482, 484-85 (2010). The Court in *Monaghan* held that inaction of an alleged aider and abettor constitutes substantial assistance if the defendant owes a fiduciary duty directly to the plaintiff. *Id.*

Here, it is established that Fingerhut/Holzer LLC owed a fiduciary duty to the Rapillos. The Rapillos were lured to Fingerhut/Holzer LLC and enticed by the "guarantee" offered by Holzer. *See* R. Conway, Dec. Ex. 6 at 4b. Further, Fingerhut advised the Rapillos to the LLC's investment vehicles. *See* R. Conway, Dec. Ex. 7 at 3-4. Moreover, it is also established that Holzer breached that duty. In fact, he served a four year prison sentence specifically for breaching that duty. While the Rapillos allege that Fingerhut was breached a fiduciary duty, in the alternative, Fingerhut aided and abetted Holzer in his breach. Fingerhut maintained his silence and never checked the records which would show the fraud being committed, all while

Holzer robbed the Rapillos (amongst others) and stood by while Holzer gave very specific directives to the Rapillos regarding the fraudulent investments.

It is clear that Fingerhut and the entity defendants breached a fiduciary duty owed to the Rapillos. However, in the event this Court does not find that Fingerhut breached a duty, it is clear that he aided and abetted Holzer in his breach of fiduciary duty. Thus, defendants' motion seeking summary judgment must be denied..

## VII. Conversion

Defendants simply assert without citing any evidence that no question of fact and that "the evidence shows that Fingerhut and the entity defendants never received one penny of the Rapillos' money." As this Court is aware, conversion is the "unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Vigilant Insurance Company of America v. Housing Authority of the City of El Paso, Texas,* 87 N.Y.2d 36, 44, 637 N.Y.S.2d 342, (1995).

Here, Holzer admits that he stole money from the Rapillos and it is not denied that Holzer illegally converted the Rapillos' money. Rather, defendants' argument is that Fingerhut and the rest of the entity defendants should not be held liable for Holzer's crimes. After the Rapillos gave $600,000.00 to Holzer, $200,000.00 of that money was immediately given to Fingerhut. *See* R. Conway, Dec. Ex. 4 at 93-94, R. Conway, Dec. Ex. 6 at 8, 9. Thus, Fingerhut participated directly in the fraud and converted the Rapillos money. Fingerhut also compelled Holzer to deed over $500,000.00 worth of V. Campus stock which was purchased with the Rapillos' money. *See* R. Conway Dec. Ex. 5 at 113; R. Conway, Dec. Ex. 14; R. Conway, Dec. Ex. 15; R. Conway, Dec. Ex. 21 (showing the transfer of stocks from Holzer to Fingerhut. These stocks were purchased by Holzer using Rapillo money).

Thus, it is clear that Fingerhut and Holzer converted the Rapillos and defendants' motion seeking summary judgment must be denied.

## **CONCLUSION**

In the defendants' Motion for Summary Judgment it is never claimed that Holzer did not act fraudulently. Rather, it is readily admitted that Holzer stole the Rapillos' money. The defendants' entire defense is postured on the assertion that because Holzer stole the Rapillos money that Fingerhut and the other entity defendants can in not be implicated.

The issue for decision by this court is whether David Holzer and Barry Fingerhut stood together as partners in operating a business, the purpose of which was to commit fraud and effectuating such fraud of multiple parties.

Fingerhut admits that he was the main contributor to the partnership, and admits to being the individual who developed the core business practices and found the investment opportunities. *See* R. Conway, Dec. Ex. 4 at 27-29, 47. Fingerhut spoke directly to the Rapillos regarding their investments and sent them annual K-1 filings reflecting their investment status with Fingerhut/Holzer LLC. R. Conway, Dec. Ex. 6 at 6.

In the highly unlikely event that Fingerhut was not directly responsible for the fraud perpetrated, it is clear that he was reckless, and thereby equally liable, in his oversight of Fingerhut/Holzer LLC and of Holzer individually as a representative of the LLC. Thus, Fingerhut is also responsible for aiding and abetting the fraud perpetrated by Holzer.

In the event that Fingerhut is not deemed responsible by virtue of his recklessness, Fingerhut and the entity defendants must be found liable under the theories of controlling persons and *respondeat superior*. As established above, neither theory is required to have been previously plead, especially in light of the fact that defendants are sufficiently on notice of these

24

claims. Holzer's fraud was perpetrated as a member of the joint partnership, thus implicating *respondeat superior*. Additionally, Fingerhut oversaw all business activities of the partnership, which made him a controlling person under the statute. As noted above, any defendant found liable under 20-a may be held jointly and severally liable with the active participant in the fraud.

Here, it is the Rapillos' contention that Fingerhut is directly liable for the mass fraud committed, however, even if Holzer was the only active participant in the fraud, Fingerhut must be held liable under *respondeat superior*, controlling persons theory, as well as aiding and abetting the actively fraudulent Holzer.

For all of the foregoing reasons, Plaintiffs respectfully request that this Court deny defendants' motion for summary judgment and for such other and further relief that this Court deems just, equitable and proper.

Dated: New York, New York
September 30, 2015

Respectfully Yours,

Marshall, Conway & Bradley
45 Broadway – Suite 740
New York, NY  10038
Attorneys for Plaintiffs

By:     Robert J. Conway (RJC-2373)

TO:     Folkenflik & McGerity
        Attorneys for Defendants
        1500 Broadway – 21st Floor
        New York, New York 10036

        David Holzer
        c/o Pamela Lustig
        500 Kappock Street
        Bronx, New York 10463