D. Holzer - March 28, 2012

Page 125

Page    125

1    with you in prison?

2        A    Yes.

3        Q    And, as best you can recall, what

4    was the nature of the discussion?

5        A    Well, basically, over - all the

6    things that we went over.

7              I explained to him what Waverly

8    was, what it was all about, how the business

9    operated, and just gave him a working

10   knowledge of the business.

11       Q    Did you have any discussion about

12   the fact that your family members had been

13   named as defendants in this lawsuit?

14       A    Did that come up then?  I'm not

15   sure.

16       Q    Did you, at any time, ask him to

17   withdraw the names of your family members from

18   the lawsuit?

19       A    At that particular time?

20       Q    At any time.

21       A    We talked about it.  Yes.

22       Q    And what did you say to him and what

23   did he say to you?

24       A    I would say that I told him that

25   they weren't involved.



D. Holzer - March 28, 2012

Page 126

Page    126

1           They shouldn't be involved.  There

2       was other people that weren't involved.  Why

3       are these people involved.  You know what I'm

4       saying?

5           Q      Did you tell him that Mr. Fingerhut

6       wasn't involved?

7           A      He never asked me that question.

8           Q      Did you tell him that -

9                  Did he ever ask you if any of the

10      money went to Mr. Fingerhut, as he did today?

11          A      No.

12          Q      Did he ever ask you if any of the

13      money went to any of the Fingerhut-Holzer

14      entities?

15          A      I don't - maybe.  I just don't

16      recall.

17          Q      Okay.

18                 But, to the extent that you had

19      such a conversation, would you have given him

20      any answers that were different from the

21      answers that you gave today?

22          A      No.

23          Q      There was no attempt to give him any

24      impression that was different than the

25      impressions you gave today with your answers

D. Holzer - March 28, 2012

Page 127

Page   127

1    about who was involved and who wasn't involved?

2        A    No.

3        Q    So, as far as you can recall, to the

4    extent that he asked about any of these subject

5    matters, your answers at the time would be

6    consistent with your answers today?

7        A    Correct.

8            MR. FOLKENFLIK:    Okay.

9        Nothing further.

10

11            (Whereupon, the Deposition

12        of DAVID HOLZER concluded at 12:10

13        P.M.)

14

15

16

17

18

19

20

21

22

23

24

25

Page 128

Page    128

```
 1              DEPONENT'S  CERTIFICATE
 2         STATE OF_____:
 3         COUNTY/CITY OF_____:
 4              Before me, this day, personally
 5    appeared DAVID HOLZER, who, being duly sworn,
 6    states that the foregoing transcript of his/her
 7    Deposition, taken in the matter, on the date,
 8    and at the time and place set out on the title
 9    page hereof, constitutes a true and accurate
10    transcript of said deposition.
11
12              _____
13                    DAVID HOLZER
14
15
16
17         Signed and subscribed to before me
18         this____day of_____,20___.
19         _____
20         NOTARY PUBLIC, STATE OF NEW YORK
21
22
23
24
25
```

1              DEPOSITION ERRATA SHEET

2     Assignment No.:  350617

3     Case Caption:  RAPILLO

                   vs.

4              FINGERHUT, ET AL.

5        DECLARATION UNDER PENALTY OF PERJURY

6             I declare under penalty of perjury

7     that I have read the entire transcript of my

8     Deposition taken in the captioned matter or the

9     same has been read to me, and the same is true

10    and accurate, save and except for changes and/or

11    corrections, if any, as indicated by me on the

12    DEPOSITION ERRATA SHEET hereof, with the

13    understanding that I offer these changes as if

14    still under oath.

15    Signed on the _____day of _____, 20___.

16    _____

17              DAVID HOLZER

18

19

20

21

22

23

24

25

Page    130

```
 1              DEPOSITION ERRATA SHEET
 2   Page No._____ Line No._____
     Change to:_____
 3   Reason for change:_____
     Page No._____ Line No._____
 4   Change to:_____
     Reason for change:_____
 5   Page No._____ Line No._____
     Change to:_____
 6   Reason for change:_____
     Page No._____ Line No._____
 7   Change to:_____
     Reason for change:_____
 8   Page No._____ Line No._____
     Change to:_____
 9   Reason for change:_____
     Page No._____ Line No._____
10   Change to:_____
     Reason for change:_____
11   Page No._____ Line No._____
     Change to:_____
12   Reason for change:_____
     Page No._____ Line No._____
13   Change to:_____
     Reason for change:_____
14   Page No._____ Line No._____
     Change to:_____
15   Reason for change:_____
     Page No._____ Line No._____
16   Change to:_____
     Reason for change:_____
17   Page No._____ Line No._____
     Change to:_____
18   Reason for change:_____
     Page No._____ Line No._____
19   Change to:_____
     Reason for change:_____
20   Page No._____ Line No._____
     Change to:_____
21   Reason for change:_____
22
23   SIGNATURE:_____ DATE:_____
             DAVID HOLZER
24
25
```

Page    131

```
 1                    DEPOSITION ERRATA SHEET
 2     Page No._____Line No._____
       Change to:_____
 3     Reason for change:_____
       Page No._____Line No._____
 4     Change to:_____
       Reason for change:_____
 5     Page No._____Line No._____
       Change to:_____
 6     Reason for change:_____
       Page No._____Line No._____
 7     Change to:_____
       Reason for change:_____
 8     Page No._____Line No._____
       Change to:_____
 9     Reason for change:_____
       Page No._____Line No._____
10     Change to:_____
       Reason for change:_____
11     Page No._____Line No._____
       Change to:_____
12     Reason for change:_____
       Page No._____Line No._____
13     Change to:_____
       Reason for change:_____
14     Page No._____Line No._____
       Change to:_____
15     Reason for change:_____
       Page No._____Line No._____
16     Change to:_____
       Reason for change:_____
17     Page No._____Line No._____
       Change to:_____
18     Reason for change:_____
       Page No._____Line No._____
19     Change to:_____
       Reason for change:_____
20     Page No._____Line No._____
       Change to:_____
21     Reason for change:_____
22
23     SIGNATURE:_____DATE:_____
                 DAVID HOLZER
24
25
```

1                    REPORTER'S CERTIFICATE

2

3              I, CINDY SCHULTZ, a Court Reporter and

4    Notary Public in and for the State of New York,

5    do hereby certify that I recorded

6    stenographically the proceedings herein at the

7    time and place noted in the heading hereof, and

8    that the foregoing transcript is true and

9    accurate to the best of my knowledge, skill and

10   ability.

11             IN WITNESS WHEREOF, I have hereunto

12   set my hand.

13

14

15

16             CINDY SCHULTZ

17

18

19

20

21

22

23

24

25

7

CUSIP No. 92240C 30 8

ITEM 1 &#150 SECURITY AND ISSUER

The class of equity securities to which this Statement on Schedule 13D (the "Statement") relates is the Common Stock, $0.01 per value ("Common Stock") of VCampus Corporation, a Delaware corporation ("VCampus"), with its principal executive offices located at 1850 Centennial Park Drive, Suite 200, Reston, VA 20191.

ITEM 2 &#150 IDENTITY AND BACKGROUND

    (a).  NAME                Barry K. Fingerhut

    (b).  BUSINESS ADDRESS  399 Park Avenue, 32nd Floor, New York, NY 10022

(c).  EMPLOYMENT       Investment Manager; Fingerhut Partners, LLC

    (d).  During the last five years, Mr. Fingerhut has not been convicted in a criminal proceeding (excluding traffic or similar violations).

    (e).  During the last five years, Mr. Fingerhut has not been a party to a civil proceeding of a judicial or administrative body of competent jurisdiction which resulted in (i) a judgment, decree or final order enjoining future violations of, or prohibiting or mandating activities subject to, federal or state securities laws or (ii) finding any violation with respect to such laws.

    (f).  Mr. Fingerhut is a citizen of the United States.

ITEM 3.  SOURCE AND AMOUNT OF FUNDS OR OTHER CONSIDERATION

On May 18, 2004, $125,000 in principal amount of a convertible note held by Mr. Fingerhut was automatically converted, upon shareholder approval, into 76,788 shares of the Common Stock of VCampus. On March 23, 2006 Mr. Fingerhut used $1,150,000 of his personal funds to purchase 1,150 shares of Series B-1 Preferred Stock of VCampus and a warrant for the purchase of 500,000 shares of the Common Stock of VCampus (the &#147B-1 Warrant&#148). In satisfaction of VCampus&#146 cash dividend obligation to Mr. Fingerhut for the quarters ended June 30, 2006, September 30, 2006, December 31, 2006, March 31, 2007 and June 30, 2007, VCampus issued a total of 247 shares of Series B-1 Preferred Stock, in the aggregate, to Mr. Fingerhut.  In exchange for Mr. Fingerhut's agreement to accept future dividends in additional shares of Series B-1 Preferred Stock instead of cash, on October 31, 2006 VCampus issued a warrant to Mr. Fingerhut for the purchase of 500,000 shares of VCampus Common Stock (in replacement of the B-1 Warrant) and a new warrant for the purchase of an additional 225,000 shares of VCampus Common Stock. Additionally, on October 31, 2006, VCampus filed an Amended Certificate of Designations for the Series B-1 Preferred Stock which, among other things, made the Series B-1 Preferred Stock immediately convertible, at the option of the holder, into VCampus Common Stock and changed the formula that determines the conversion price.  The current conversion price floor for the Series B-1 Preferred Stock is $0.37 per share.  Based upon the fact that the Series B-1 Preferred Stock became immediately convertible into VCampus Common Stock at $0.37 per share, Mr. Fingerhut's beneficial ownership of VCampus Common Stock could be deemed to have increased by 3,356,756 shares effective on October 31, 2006. On January 25, 2006, 307.5 shares of Series A-1 Preferred Stock (convertible into a total of 1,025,000 shares of common stock at $0.30 per share) and 1,397 shares of Series B-1 Preferred Stock (convertible into a total of 3,775,676 shares of common stock at $0.37 per share) were transferred to Mr. Fingerhut by a business associate as consideration for the cancellation of debt owed to Mr. Fingerhut by the business associate in an amount equal to the original purchase price of the shares acquired by the business associate.  Mr. Fingerhut disclaims beneficial ownership of the shares of common stock issuable to him upon conversion of the Series B-1 Preferred Stock and upon exercise of the Series B-1 Warrant to the extent that

Schedule 13D

CUSIP No. 92240C 30 8

such shares may not be deemed beneficially owned by him by virtue of the conversion price and exercise price not being fixed.

ITEM 4.  PURPOSE OF TRANSACTION

Mr. Fingerhut acquired his shares of VCampus for investment and not with the purpose of changing or influencing the control of VCampus. Mr. Fingerhut does not have any plan or proposal which relates to or would result in any actions enumerated in subitems (a) through (j) of Item 4 of Schedule 13D, except that Mr. Fingerhut may dispose of some or all of the Common Stock or may acquire additional shares of Common Stock from time to time, depending upon price and market conditions, evaluation of alternative investments, and other factors and Mr. Fingerhut has from time to time in the past and is currently in discussions with VCampus management and the other holders of VCampus convertible debt and preferred stock regarding the terms under which Mr. Fingerhut and other investors would convert their debt and preferred securities into common stock.  No definitive terms have been agreed upon, but such recapitalization, if consummated, could result in a change in control of the Company and/or the composition of the Board of Directors.



RECEIVED
SDNY PRO SE OFFICE

2019 AUG 26  AM 9:48

Rapillo
14 Winding Lane
Scarsdale, NY  10583

U.S. District Court of the
Southern District of NY
Pro Se Intake Unit
40 Foley Square, Room 105
New York, NY  10007