USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/1/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
:
JOHN RAPILLO and HEIDI RAPILLO,            :
:
                Plaintiffs,    :
:     09-cv-10429 (VSB)
    - against -           :
:     **OPINION & ORDER**
:
BARRY FINGERHUT, et al.,              :
:
                Defendants.    :
:
-------------------------------------------------------- X

Appearances:

Heidi Rapillo
John Rapillo
Scarsdale, New York
*Pro se Plaintiffs*

Max Folkenflik
Folkenflik & McGerity
New York, New York
*Counsel for Defendants Barry Fingerhut, Fingerhut-Holzer Partners LLC, Fingerhut-Holzer Equities, Inc., Fingerhut-Holzer, Inc., Fingerhut-Holzer Fund L.P., Geo Capital Partners, Inc., Fingerhut-Holzer The Waverly I, LLC, and Fingerhut-Holzer The Waverly II, LLC*

VERNON S. BRODERICK, United States District Judge:

      Before me is Plaintiffs' motion for reconsideration, (Doc. 137), of my September 14, 2016 Memorandum & Order (the "Memorandum & Order," (Doc. 84)) granting the motion for summary judgment of Defendants Barry Fingerhut, Fingerhut-Holzer Partners LLC, Fingerhut-Holzer Equities, Inc., Fingerhut-Holzer, Inc., Fingerhut-Holzer Fund, L.P., Geo-Capital Partners, Inc., Fingerhut-Holzer the Waverly I, LLC, and Fingerhut-Holzer the Waverly II, LLC

(collectively, the "Summary Judgment Defendants"). Because Plaintiffs have not satisfied the strict standard for reconsideration, their motion is DENIED.

I.      **<u>Procedural History</u>**[1]

Plaintiffs filed their Complaint in this action on December 28, 2009, (Doc. 1), which was followed on August 17, 2010 by an Amended Complaint against the Summary Judgment Defendants and Defendant David Holzer, (Doc. 13). In the Amended Complaint, Plaintiffs asserted the following claims: breach of fiduciary duty under 15 U.S.C. § 80B-6; fraud under 15 U.S.C. § 80B-6; violations of § 10b of the Securities Exchange Act and Rule 10b-5; and New York state common law claims of fraud, conversion, and breaches of fiduciary duty. (*See id.*)

On August 15, 2015, the Summary Judgment Defendants filed a motion for summary judgment, (Doc. 69), along with a Local Civil Rule 56.1 Statement, memorandum of law, declarations, and exhibits in support, (Docs. 70–73). On September 30, 2015, Plaintiffs filed their memorandum of law in opposition, response to Defendants' Local Civil Rule 56.1 statement, and declaration with exhibits. (Docs. 78–81.) In their opposition, Plaintiffs asserted three alternative theories of fraud liability not mentioned in their pleadings: aiding and abetting, veil piercing, and respondeat superior. (*See* 9/14/16 M&O at 22 n.30, 27 n.31.)[2] On October 14, 2015, Defendants filed a memorandum and affidavit in reply. (Docs. 81–82.)

On September 14, 2016, I issued a Memorandum & Order granting the Summary Judgment Defendants' motion in its entirety. (Doc. 84.)

---

[1] For purposes of this Opinion & Order, I assume familiarity with the factual and procedural background of this case, and incorporate by reference the background summarized in the Memorandum & Order. I recount below only that portion of the background that is relevant to the instant Opinion & Order.

[2] "9/14/16 M&O" refers to my September 14, 2016 Memorandum & Order in this case. (Doc. 84.)

2

Plaintiffs filed a notice of appeal from the Memorandum & Order on October 5, 2016. (Doc. 85.)  The appeal was later dismissed because no final order had been issued.  (Doc. 100.)  On January 6, 2017, Plaintiffs' counsel filed a motion to withdraw from this case, (Doc. 91), which I granted on January 9, 2017, (Doc. 92).  Plaintiffs attempted to secure legal representation, (*see* Doc. 93), but ultimately decided to proceed pro se, (*see* Doc. 101).  Plaintiffs also filed various letters seeking, among other things, reconsideration of my Memorandum & Order, (*see* Doc. 95, 107).  On October 27, 2017, I directed Plaintiffs to file a proper motion pursuant to Federal Rule of Civil Procedure 60(b) by November 17, 2017.  (Doc. 112.)  Plaintiffs subsequently requested and received multiple extensions of their time to file that motion. (*see* Docs. 113, 114, 120, 121, 122, 123, 134, 140).

On June 27, 2019, Plaintiffs filed their motion for reconsideration, (Doc. 137), along with a memorandum of law, declaration, and exhibits in support, (Docs. 138–39).  The motion seeks reconsideration of the portion of my decision that dismissed Plaintiffs' claims of controlling person liability under section 10(b), fraud, and conversion against the Summary Judgment Defendants.  On July 29, 2019, the Summary Judgment Defendants filed their memorandum of law, declaration, and exhibits in opposition to Plaintiffs' motion for reconsideration.  (Docs. 145–47.)  On August 26, 2019, Plaintiffs filed a memorandum and exhibits in reply.  (Doc. 149.)

Defendant David Holzer has defaulted in this action, and I entered a default judgment against him on September 11, 2019.  (Doc. 150.)

## II.     Relevant Findings of Fact on Summary Judgment

Plaintiffs' claims arise out of their attempts to invest money through Defendant Holzer in various ventures in which one or more Defendants was involved, and Defendant Holzer's

eventual appropriation of that money for himself.  I recount here the findings of fact I made in my Memorandum & Order that are relevant to the instant motion.

Plaintiffs met Defendant Holzer in 1983 and eventually became friends with him.  (*See* 9/14/16 M&O at 4.)  Holzer, for his part, was engaged in business with Defendant Fingerhut.  Fingerhut and Holzer were (1) managing members of Defendants Fingerhut-Holzer Partners LLC, Fingerhut-Holzer the Waverly I, LLC, and Fingerhut-Holzer the Waverly II, LLC; (2) shareholders in Defendants Fingerhut-Holzer Equities, Inc. and Fingerhut-Holzer, Inc.; and (3) general partners in Fingerhut-Holzer Fund, L.P.  (*Id.* at 4–5.)

After Plaintiff John Rapillo received $2.4 million in settlement proceeds from an unrelated personal injury case, he asked Defendant Holzer for financial advice.  At the time, Plaintiffs understood that Defendants did not accept investments from individual investors such as themselves and only accepted investments from large companies.  (*Id.* at 6.)  Defendant Holzer said that he would let Plaintiffs know when a good investment opportunity arose.  (*Id.*)

Subsequently, between October 2005 and March 2006, Plaintiffs made four separate wire transfers of money to be invested.  (*Id.* at 6–9.)  Plaintiffs wired this money to Defendant Holzer with the understanding that he would "pool" his own money with their money and invest the commingled funds in different ventures in which various Defendants were engaged.  (*Id.* at 12.)  One of these transfers was a "legitimate investment" that Plaintiffs wired to a law firm, while the other three transfers, which totaled $1,600,000, were wired to Defendant Holzer's personal bank account.  (*Id.* at 6–7.)  However, instead of investing Plaintiffs' money that they had transferred to him, Holzer kept and used the majority of the money for himself.  (*Id.* at 9–10.)  Holzer was eventually arrested and pled guilty to multiple felonies.  (*Id.* at 11; *see also* Doc. 79, at ¶ 37.)

Although the facts surrounding Holzer's actions were undisputed, I found that "there [was] no evidence that Fingerhut had any awareness of [the three investments] by the Rapillos . . . until after Holzer's crimes against Fingerhut were discovered and the District Attorney uncovered crimes against the Rapillos." (*Id.* at 13.) Further, I identified "ample evidence in the record" that contradicted Plaintiffs' assertion that Fingerhut knew of their "pooling" arrangement with Holzer:

> First, Mr. Rapillo testified that he did not know whether Fingerhut or any of the Movants knew, prior to Holzer's arrest, that the Rapillos were "pooling" their money with Holzer's money so that he could invest on their behalf. Second, Mr. Rapillo testified that he did not know whether Fingerhut or any of the Movants knew, prior to Holzer's arrest, that the Rapillos had transferred money to Holzer for the purpose of investing on their behalf. Third, Ms. Rapillo testified that she "assumed [Fingerhut] knew" they were pooling their money with Holzer, but Holzer never represented to her that Fingerhut had knowledge of their pooling arrangement. Fourth, Ms. Rapillo acknowledges that she never saw any documentary evidence demonstrating Fingerhut's awareness of their pooling arrangement. Additionally, the Rapillos understood that Movants did not accept investments from individual investors such as themselves, because Defendants "only [got] involved with" investments from "large companies, [or] large corporations." Thus, the Rapillos endeavored to invest with Fingerhut and the Corporate Defendants by channeling their money through Holzer. Ms. Rapillo testified that she and her husband channeled their money through Mr. Holzer because they "weren't big enough fish" for Fingerhut and the Corporate Defendants to deal with directly. Similarly, Mr. Rapillo testified that their "money was not substantial enough" for Fingerhut and the Corporate Defendants to transact business with them directly.

(*Id.* at 13–14 (citations omitted)).

Based in large part on these factual findings, I held, in relevant part, that: (1) because Plaintiffs failed to demonstrate the Summary Judgment Defendants' culpable participation in or knowledge of Defendant Holzer's primary violation, Plaintiffs' claim of "controlling-person liability" under Section 20(a) of the Securities Exchange Act failed, (*id.* at 26); (2) because Plaintiffs failed to provide any evidence that the Summary Judgment Defendants had actual knowledge of or provided substantial assistance to Defendant Holzer, their aiding and abetting

5

fraud claims failed, (*id.* at 28–29); (3) the Summary Judgment Defendants could not be liable for Defendant Holzer's fraud under a theory of respondeat superior because Holzer's scheme was outside the scope of his employment and not in furtherance of Movants' business, as he used Plaintiffs' money for himself, (*id.* at 30); (4) Fingerhut could not be liable for Holzer's fraud under a veil piercing theory because Plaintiffs had failed to articulate how the doctrine would operate in this case, because no evidence suggested that Fingerhut was involved in the fraud, and because Plaintiffs had cited no evidence to satisfy the elements of a veil piercing claim, (*id.* at 31–32); and (5) because the Summary Judgment Defendants had not "assumed or exercised control over the Rapillos' personal property," and because there was no evidence they had actual knowledge of Holzer's conversion, they could not be liable for conversion or for aiding and abetting conversion, (*id.* at 34–35).

### III.   Legal Standard

Rule 60(b) provides in pertinent part:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged . . . or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  "Rule 60(b) provides 'extraordinary judicial relief' and can be granted 'only upon a showing of exceptional circumstances.'" *Kubicek v. Westchester Cty.*, No. 08 Civ. 372(ER), 2014 WL 4898479, at *1 (S.D.N.Y. Sept. 30, 2014) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986)).  This necessarily means that the standard for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might

6

reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). *See also Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (stating that a movant must identify "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.")

A motion for reconsideration is "neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced." *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005). Nor is a motion for reconsideration a time to "advance new facts, issues or arguments not previously presented to the Court." *Polsby v. St. Martin's Press, Inc.*, No. 97 Civ. 690(MBM), 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000) (internal quotation marks omitted). "The decision of whether to grant or deny a motion for reconsideration is "within 'the sound discretion of the district court.'" *Premium Sports Inc. v. Connell*, No. 10 Civ. 3753(KBF), 2012 WL 2878085, at *1 (S.D.N.Y. July 11, 2012) (quoting *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009)). Moreover, "[t]he moving party bears the burden of proof." *Freedom, N.Y., Inc. v. United States*, 438 F. Supp. 2d 457, 462 (S.D.N.Y. 2006).

**IV.     Discussion**

Plaintiffs seek reconsideration of my grant of summary judgment dismissing their claims of controlling person liability, conversion, and fraud based on respondeat superior and veil piercing against the Summary Judgment Defendants. (Pls.' Mem. 5, 7; Pls.' Reply 5–6.) Plaintiffs bring their motion pursuant to Rule 60(b)(6), which authorizes reconsideration for "any other reason that justifies relief," asserting that relief is justified due to "[n]onfeasance of [their] attorney," who they claim "failed to present and enunciate key evidence to the Court." (Pls.'

7

Mem. 3.)³  In support of this contention, Plaintiffs present seven exhibits as well as various factual statements contained in their memorandum of law and the affidavit of John Rapillo.  (*See* Pls.' Mem.; J. Rapillo Aff.)  I find that Plaintiffs' submissions fail to satisfy the strict standard for reconsideration.

"[A] 'proper case' for Rule 60(b)(6) relief is only one of 'extraordinary circumstances,' or 'extreme hardship.'"  *Harris v. United States*, 367 F.3d 74, 81 (2d Cir. 2004) (quoting *United States v. Cirami,* 563 F.2d 26, 32 (2d Cir. 1977).  "In typical civil proceedings, [courts] very rarely grant[] relief under Rule 60(b)(6) for cases of alleged attorney failure or misconduct."  *Id*.  This is because, where plaintiffs have chosen their attorney as their representative in an action, they "cannot [then] avoid the consequences of the acts or omissions of this freely selected agent.  Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney."  *Id.* (quoting *Link v. Wabash Railroad Co.,* 370 U.S. 626, 633–34 (1962)).

Accordingly, to constitute "extraordinary circumstances" for purposes of Rule 60(b)(6), "a lawyer's failures must be so egregious and profound that they amount to the abandonment of the client's case altogether, either through physical disappearance, *see Vindigni v. Meyer,* 441 F.2d 376 (2d Cir. 1971), [] constructive disappearance, *see Cirami,* 563 F.2d at 34–35," *id.*, "or a similar inability to provide adequate representation," *D'Angelo v. State Farm Fire & Cas. Co.*, 32 F. App'x 604, 605 (2d Cir. 2002) (summary order).  Even "[a]n attorney's gross negligence alone is not a basis for relief under Rule 60(b)(6)."  *Klipsch Grp., Inc. v. Shenzhen Sosound*, No.

---

³ "Pls. Mem." refers to Plaintiffs' Memorandum of Law to Vacate Judgment Pursuant to Federal Rule of Civil Procedure 60(b)(6), filed on June 27, 2019.  (Doc. 138.)

8

11 Civ. 9187(PAE), 2013 WL 1387061, at *3 n.4 (S.D.N.Y. Apr. 5, 2013) (internal quotation marks omitted)).

Here, Plaintiffs have not argued that their former counsel, Robert Conway, abandoned their case or was unable to provide adequate representation. Indeed, any argument of abandonment would be unfounded. Conway appeared before the court throughout this litigation, engaged in the discovery process, and filed a voluminous opposition[4] to Defendants' motion for summary judgment. Although he ultimately sought to withdraw from his representation, he did so by way of proper motion brought after I issued the Memorandum & Order. Even if, *arguendo*, Plaintiffs' former counsel had failed to "enunciate key evidence" in his opposition to Defendants' motion for summary judgment—which ultimately included 22 exhibits—this would not constitute the kind of "egregious" failure that rises to the level of abandonment. *See Abad v. United States*, No. 01 CRIM. 831 (GBD), 2018 WL 2021698, at *2 (S.D.N.Y. Apr. 12, 2018) (counsel's failure "to raise specific issues in a habeas petition" did not warrant relief under Rule 60(b)(6)); *FirstStorm Partners 2, LLC v. Vassel*, No. 10-CV-2356 (KAM)(RER), 2013 WL 654396, at *17 (E.D.N.Y. Feb. 21, 2013) (denying Rule 60(b)(6) motion asserting attorney misconduct where counsel did not file opposition to opposing party's motion for summary judgment); *Abu-Rub v. Jordanian Airlines, Inc.*, No. 07 Civ. 7888(JGK)(KNF), 2009 WL 3152561, at *5 (S.D.N.Y. Sept. 28, 2009) (denying Rule 60(b)(6) motion based on attorney misconduct where even though counsel had "requested enlargements of time to file supplemental

---

[4] In my Memorandum & Opinion, I verbally censured Plaintiffs' counsel because the Local Civil Rule 56.1 statement he prepared repeatedly purported to dispute various facts, but "many of those assertions [we]re merely conclusory statements or arguments without appropriate citations or with misleading citations in an improper attempt to create disputed issues of fact." (9/14/16 M&O 1–2.) Although I concluded that this practice contravened the letter and spirit of Local Civil Rule 56.1 and imposed "an undue burden" on me, I ultimately undertook an independent review of the record and reached my decision on the basis of that review. Thus, Plaintiffs' former counsel's approach to the 56.1 Statement did not affect my decision and did not constitute "abandonment" of Plaintiffs' case.

9

information, [] consistently provided the Court with deficient filings, and failed to file their response to the Court's April 27, 2009 order," they had "at least[] minimally attend[ed] to their obligations." (internal quotation marks omitted)).

In any event, I disagree with Plaintiffs that their former counsel actually failed to present any evidence that would have altered my decision on summary judgment. As an initial matter, much of the evidence now offered by Plaintiffs was, in fact, included by their former counsel in their original summary judgment briefing. Certain documents were submitted in their entirety, namely: the February 7, 2013 deposition of Barry Fingerhut, (J. Rapillo Decl. Ex. 3; *see also* Conway SJ Decl. Ex. 5)[5]; the March 28, 2012 deposition of David Holzer, (J. Rapillo Decl. Ex. 6; *see also* Conway SJ Decl. Ex. 6); and a January 25, 2008 SEC Schedule 13D for VCampus Corporation ("VCampus SEC Sched. 13D") showing Defendant Holzer's transfer of VCampus shares to Fingerhut, (J. Rapillo Decl. Ex. 7; *see also* Conway SJ Decl. Ex. 22). Two exhibits were not submitted on summary judgment, but the information they contained was provided to me in another form. For example, in support of the instant motion, Plaintiffs submit the plea agreement of Defendant Holzer, (J. Rapillo Decl. Ex. 5); however, on summary judgment, Plaintiffs' former counsel provided a copy of a transcript of Holzer's plea hearing, (Conway SJ Decl. Ex. 17). Similarly, Plaintiffs submit a report by "Thacher & Associates" regarding Holzer and Fingerhut,[6] (J. Rapillo Decl. Ex. 2), which they cite primarily for its descriptions of several financial agreements between Holzer and various Summary Judgment Defendants, (*see* Pls.' Mem. 8–9); while the report was not included in the summary judgment briefing—notably, it

---

[5] "J. Rapillo Decl." refers to the Declaration of John Rapillo In Support of Motion to Vacate Order Dated September 14, 2016 Pursuant to Fed. R. Civ. P. Rule 60(b), filed on June 27, 2019. (Doc. 139.) "Conway SJ Decl." refers to the Declaration of Robert J. Conway in Opposition to Defendants' Summary Judgment Motion, filed on September 30, 2015. (Doc. 80.)

[6] Plaintiffs state that "Fingerhut hired Thacher [&] Associates to investigate Holzer," but do not provide any evidence for this statement. (*See* Pls.' Mem. 2.)

10

appears to be inadmissible hearsay—copies of the underlying financial agreements discussed in the report were included.  (*See* Conway Decl. Exs. 12, 13.)  Finally, Plaintiffs submit an April 2, 2014 letter from Defendants' counsel, Max Folkenflik that was originally submitted to me and was therefore part of the record in this case.  (J. Rapillo Decl. Ex. 4; *see also* Doc. 38.)  The remaining exhibit—the February 18, 2009 Affirmation of Shannon Rowe ("Rowe Affirmation"), an investigator in the New York County District Attorney's Office, (J. Rapillo Decl. Ex. 1)—appears to be newly submitted.

Moreover, none of the documents Plaintiffs now submit would have changed my core finding that there was no evidence that the Summary Judgment Defendants had any knowledge of Holzer's misappropriation of Plaintiffs' funds.  Plaintiffs' evidence can be divided into two substantive categories.  First, according to Plaintiffs, their exhibits show that Holzer transferred money to Fingerhut on various occasions shortly after the Rapillos had transferred money to Holzer, purportedly demonstrating that Holzer was transferring the Rapillos' money to Fingerhut.  Specifically, Plaintiffs claim that the Rowe Affirmation demonstrates that on March 23, 2006, Plaintiffs wired $800,000 to Holzer pursuant to their understanding of the pooling agreement, and that on the same day, Holzer purchased $500,000 in V-Campus stock.  (Pls. Mem. 3; Rowe Aff. ¶¶ 17.)  Further, on January 25, 2008, three months before his indictment by the New York County District Attorney, Holzer transferred his VCampus shares to Fingerhut for cancellation of a debt he owed.  (Pls. Mem. 3; Rowe Aff. ¶¶ 17; *see also* VCampus Sched. 13D, at 5.)  Plaintiffs also point to the statement by Defendants' counsel, Max Folkenflik, that "Holzer used some of the money he received from Plaintiffs to invest in V-Campus in his own name and to pay $200,000 on an antecedent $1 million debt he owed to Fingerhut," (Pls. Mem. at 4; Doc. 38), and to a portion of Fingerhut's deposition in which Folkenflik stated that "we don't know"

11

whether Holzer used the Rapillos' funds to purchase the $500,000 in V-Campus stocks, and Fingerhut did not challenge that statement, (Pls.' Mem. 4–5; J. Rapillo Decl. Ex. 3, at 99–101). In addition to the VCampus transactions, Plaintiffs also point to other purported transactions summarized in the Rowe Affirmation. According to the Rowe Affirmation, on December 15, 2005, Plaintiffs wired $600,000 to Holzer; that same day, Holzer transferred $200,000 to Fingerhut's personal account, followed by additional smaller transfers to Fingerhut-Holzer Partners on January 9 and 13, 2006. (Rowe Aff. ¶ 15.) The Rowe Affirmation also states that on January 31, 2006, Plaintiffs transferred $200,000 to Holzer, and on February 10, 14, and 27, 2006, Holzer transferred a total of $140,000 to the account of Defendant Fingerhut-Holzer Partners. (*Id.*)

Second, Plaintiffs contend that the evidence shows that Fingerhut exerted control over Holzer and was pressuring him to secure additional funds with which to repay Fingerhut, ultimately causing him to defraud Plaintiffs. In support of this statement, Plaintiffs cite to the fact that Fingerhut was the senior investor in Fingerhut-Holzer partners and therefore could "exercise financial pressure and control over Holzer." (Pls.' Mem. 5–6.) Plaintiffs also assert that Holzer was in debt to Fingerhut, and that Fingerhut "pressur[ed] Holzer to return his . . . money and threaten[ed] to turn him into the D.A.," thereby forcing Holzer to solicit personal acquaintances. (*Id.* at 7–9; J. Rapillo Decl. Ex. 2, at 5.) Plaintiff John Rapillo states in his declaration that:

> During the spring of 2007, I was at David Holzer's home in New City, NY. David Holzer received a phone call from Barry Fingerhut. David Holzer reiterated the content of that conversation to me stating that "All he wants is money – he wants me to refinance my house and get more money wherever I can." This shows the pressure Fingerhut was putting on David Holzer.

12

(J. Rapillo Decl. 1.)  Finally, Plaintiffs contend that Fingerhut "permit[ted] his personal attorney, Max Folkenflik, to represent Holzer in his legal battles and most likely paying for those services."  (Pls.' Mem. 5–6.)

Leaving aside any questions of admissibility and the lack of evidentiary support for many of Plaintiffs' contentions, I find that neither category of evidence provides any basis from which a reasonable jury could conclude that at the time of Holzer's misconduct, Fingerhut knew about Plaintiffs' pooling arrangement and investments with Holzer.  Even if the money that Holzer purportedly transferred to Fingerhut and to Fingerhut-Partners LP originally belonged to Plaintiffs, that would not bear on whether Fingerhut knew that money had belonged to Plaintiffs and that they intended for it to be invested.  Similarly, the facts that Holzer owed money to Fingerhut, that Fingerhut wanted to be repaid, and that Holzer ultimately repaid him with Plaintiffs' funds, even if true, would not demonstrate that Fingerhut knew Holzer was repaying him by misappropriating the Rapillos' personal funds in particular, much less that he was controlling or participating in that misappropriation.  Indeed, as I stated in my Memorandum & Order, the evidence in the record suggests "that the Rapillos transferred their money to Holzer with the understanding that Fingerhut would *not* know of their pooling of money with Holzer so that they could make investments . . . . [i]n other words, their investments were a secret between them and Holzer, and it was understood between the Rapillos and Holzer that these investments would be hidden and/or not disclosed to Fingerhut or the Corporate Defendants."  (9/14/16 M&O at 26.)

As stated above, my finding that Fingerhut did not have knowledge of Holzer's fraud and conversion formed the basis for my dismissal of Plaintiffs' claims of section 10(b) controlling person liability; fraud based on aiding and abetting, respondeat superior, veil piercing; and

13

conversion. Plaintiffs have failed to provide any "controlling decisions or data that [I] overlooked" that would "alter th[at] conclusion." *Shrader*, 70 F.3d at 257. Accordingly, their motion for reconsideration must be denied.

## V. Conclusion

For the foregoing reasons, Plaintiffs' motion for reconsideration is DENIED. The Clerk of Court is respectfully directed to terminate the motion pending at Document 137, and to enter judgment for Defendants Barry Fingerhut, Fingerhut-Holzer Partners LLC, Fingerhut-Holzer Equities, Inc., Fingerhut-Holzer, Inc., Fingerhut-Holzer Fund L.P., Geo Capital Partners, Inc., Fingerhut-Holzer The Waverly I, LLC, and Fingerhut-Holzer The Waverly II, LLC.

The Clerk of Court is further directed to mail a copy of this Opinion & Order to the pro se Plaintiffs.

SO ORDERED.

Dated: June 1, 2020
New York, New York

*[signature]*
Vernon S. Broderick
United States District Judge